Donald Ray McCRAY, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–92–01770–CR.

Court of Appeals of Texas, Dallas.

July 26, 1993.

---

6. In *Rodriguez,* the court affirmed a child support award of $2,500 against needs of $1,742.17.

Kenneth D. Carden, Los Colinas, for appellant.

Michael J. Sandlin, Dallas, for appellee.

Before BAKER, MALONEY and WHITTINGTON, JJ.

## OPINION

MALONEY, Justice.

The jury convicted Donald Ray McCray of murder and assessed a thirty-five year sentence. Appellant argues that the trial court erred in not charging the jury on self-defense, and in allowing the chief medical examiner to testify to the cause of death. He also argues the evidence is insufficient to

1. Appellant's confession is not included in our record. All evidence of the confession is gleaned

support his conviction. We affirm the trial court's judgment.

## STATEMENT OF THE FACTS

The deceased, Betty Jo Bradford, her daughter, Pamela Bradford, and appellant lived together. The night before the deceased died, appellant and the deceased went to a club with some other people. Pamela stayed at home.

At some point during the evening, the deceased returned home by herself. She was looking for appellant. Appellant arrived at the house the following morning.

Pamela was outside on the porch when she heard her mother calling. Pamela went in the house. She saw the appellant straddling her mother with a knife in his hand. Pamela ran to a neighbor's home to get help. When she returned home, she found her mother on the floor. Her mother had been stabbed.

Appellant fled from the house in the decedent's car. The police arrested appellant at a gas station near the deceased's home.

## THE CONFESSION

Appellant's confession[1] stated that he and the deceased had argued over another woman. Sometime after their argument, he went to the house to get his clothes. The deceased pulled a gun and would not let him leave. Appellant told the deceased he needed a drink of water. When he went to the kitchen, he put a steak knife in his pocket. After he came out of the kitchen, the deceased told appellant he could have his clothes. As appellant was leaving with his clothes, the deceased hit him on the head with a gun and knocked him down. Appellant said that the deceased then got on top of him and choked him. Appellant stabbed the deceased until she got off of him.

Appellant took the car keys and drove the car to the gasoline station. Because the station was closed, he just sat in the back of the station.

from testimony.

## SUFFICIENCY OF THE EVIDENCE

In his first point of error, appellant asserts that the evidence is insufficient to support his conviction. He argues that when the State introduced his confession, it introduced evidence exculpatory of the murder charge—that appellant killed the deceased in self-defense. Appellant maintains the State did not· disprove self-defense beyond a reasonable doubt.

### 1. Standard of Review

■ In analyzing the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). We determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Turner v. State,* 805 S.W.2d 423, 427 (Tex.Crim.App.), *cert. denied,* — U.S. ——, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991).

■ The fact finder is the sole judge of witnesses' credibility and the testimonial weight. *See Adelman v. State,* 828 S.W.2d 418, 421 (Tex.Crim.App.1992); *Bonham v. State,* 680 S.W.2d 815, 819 (Tex.Crim.App. 1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985). The trier of fact can believe or disbelieve any witness or any part of his testimony. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App.1986), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988); *see* TEX.CODE CRIM.PROC. ANN. art. 38.04 (Vernon 1979); *Bowden v. State,* 628 S.W.2d 782, 784 (Tex.Crim.App. 1982).

### 2. Self–Defense

■ A person is justified in using deadly force if a reasonable person would not have retreated and it was immediately necessary to protect himself against another's use of deadly force. TEX.PENAL CODE ANN. § 9.32 (Vernon Supp.1993). If the evidence raises self-defense, the State has the burden of persuasion in disproving the self-defense.

Proving the offense beyond a reasonable doubt satisfies the State's burden. *Saxton v. State,* 804 S.W.2d 910, 913 (Tex.Crim.App. 1991).

### 3. Application of Law to Facts

The State offered and the trial court admitted appellant's confession. Appellant argues that because his confession was exculpatory of murder, the State had to disprove the self-defense or the jury had to acquit. Appellant relies on *Palafox v. State,* 608 S.W.2d 177 (Tex.Crim.App.1979), as authority for his argument.

■ The *Palafox* court determined that the "voucher rule" [2] required that the State disprove the defendant's statement. *Id.* at 182. The rules of evidence abolished the voucher rule by allowing a party to impeach its own witness. TEX.R.CRIM.EVID. 607. Exculpatory evidence contained within an accused's confession no longer binds the State. *Russeau v. State,* 785 S.W.2d 387, 390 (Tex. Crim.App.1990).

■ We determine whether the State met its burden of persuasion by the sufficiency of the evidence to sustain a guilty verdict. We look at the evidence in the light most favorable to the verdict.

When Pamela got up on the morning of the deceased's death, the deceased was combing her hair in the bathroom. Appellant was standing near the door watching the deceased. The deceased told appellant that she would leave him alone and not even speak to him.

Pamela went outside to meet her cousin. When she went back inside the house, she saw appellant walk out of the kitchen and into the den. Appellant "licked his tongue out at" her so she went outside again.

While outside, Pamela heard the deceased calling. Pamela reentered the house and found her mother in her bedroom. She was on the floor between the bed and the television. Appellant was kneeling over the deceased. She was on her side between his

---

**2.** The "voucher rule" prohibited the State from impeaching its own witnesses—it vouched for their credibility. Thus, when the State introduced any evidence which exculpated the accused, it was bound by those statements.

legs. The deceased told Pamela to "get the keys. He's got a knife." Appellant had a steak knife in his hands.

Pamela ran to a neighbor's house for help. As she was waiting for the neighbor to go back to the house with her, she realized that her mother's car was gone. Pamela ran back to the house. She went inside the house and found her mother in her bedroom doorway. Her mother's bloody body was under a dresser mirror.

Pamela called the police. She gave them a description of the car and its license plate number. The police found the deceased's car at a near-by gasoline station. The station was not open. Appellant appeared from behind the closed building. Appellant admitted he had driven the car from the deceased's house.

Between the time Pamela went to their neighbor's house and the police found appellant, he telephoned the deceased's son. During the telephone conversation, appellant said he had "cut" the deceased. However, he told the police he stabbed the deceased because she attacked him with a gun.

Pamela never saw the deceased with a gun on the day she was killed. The police found two knives in the car. The police did not find a gun in the car, at the house, or on appellant's person.

The chief medical examiner and the autopsy report described a fatal wound to the deceased's heart. The wound was consistent with someone standing or kneeling above the deceased and striking downward.

Any rational trier of fact could have found beyond a reasonable doubt that appellant intentionally and knowingly killed the deceased.[3] The evidence was sufficient to support the jury's guilty verdict.

We overrule appellant's point of error number one.

### JURY CHARGE

In point of error number two, appellant restates his argument that his confession raised self-defense. He then argues that once the evidence raised a defensive issue,

section 2.03 of the Texas Penal Code required the trial court to charge the jury on that defensive issue.

The State responds that the evidence did not raise self-defense. And even if it did, appellant waived his right to complain by not objecting.

### 1. Penal Code—Section 2.03

Appellant relies on the following portion of the statute:

> (d) If the issue of the existence of a defense is submitted to the jury, the court shall charge that a reasonable doubt on the issue requires that the defendant be acquitted.

TEX.PENAL CODE ANN. § 2.03(d) (Vernon 1974). Appellant misplaces his reliance on this portion of the statute.

■ We give statutory words their plain meaning. *See Campos v. State*, 623 S.W.2d 657, 658 (Tex.Crim.App. [Panel Op.] 1981). Section 2.03(d) addresses only what the trial court must include in the defensive charge it submits to the jury. Only the preceding subsection instructs the trial court when to submit a defensive charge to the jury. *See* TEX.PENAL CODE ANN. § 2.03(c). And, subsection (c) directs the trial court when *not* to give a defensive charge. *Id.* Section 2.03 does not mandate that the trial court give a defensive charge.

### 2. Waiver

■ The same rules apply to a pro se defendant as apply to any attorney who represents a defendant. Courts do not make allowances merely because a defendant waives his right to counsel and chooses to represent himself. *Johnson v. State*, 760 S.W.2d 277, 279 (Tex.Crim.App.1988).

■ To preserve a complaint for appellate review, a party must present to the trial court a timely request, objection, or motion. TEX.R.APP.P. 52(a); *Boyd v. State*, 811 S.W.2d 105, 113 (Tex.Crim.App.), *cert. denied*, ── U.S. ──, 112 S.Ct. 448, 116 L.Ed.2d 466 (1991). A party's failure to object to the trial court's action waives any

---

**3.** The jury could have also found that the de-

ceased did not attack appellant with a gun.

error on appeal. *Boyd,* 811 S.W.2d at 113; *see Sims v. State,* 768 S.W.2d 863, 865 (Tex. App.—Texarkana 1989), *pet. dism'd, improvidently granted,* 792 S.W.2d 81 (Tex.Crim. App.1990).

■ Appellant cannot invite error and then complain of it on appeal. *Ex Parte Guerrero,* 521 S.W.2d 613, 614 (Tex.Crim. App.1975). If the trial court submits the defendant's requested jury charge, he cannot complain of that charge on appeal. *Tucker v. State,* 771 S.W.2d 523, 534 (Tex.Crim.App. 1988), *cert. denied,* 492 U.S. 912, 109 S.Ct. 3230, 106 L.Ed.2d 578 (1989).

### 3. Application of Law to Facts

■ Appellant represented himself at trial. The trial court admonished appellant on the dangers of proceeding pro se. The trial court clearly explained that appellant would have to follow the same rules as the State's attorney. The trial court also told appellant that it would treat him like any attorney that appeared in court.

Although the trial court advised appellant it would not give him special treatment, the trial judge specifically asked appellant if he wanted anything else included in the charge. When appellant appeared not to understand, the trial court further explained its question. The trial court asked appellant if he wanted the jury instructed on the lesser offense of voluntary manslaughter. It explained that voluntary manslaughter carried a lower penalty range. The trial court then asked if appellant wanted to give the jury the option of "saying that you did it in self-defense, based on what you said in your voluntary statement." When appellant didn't reply, the trial court said, "You just want plain murder; right?" To which appellant replied, "That's just fine with me, Your Honor."

The trial court did not prepare the jury charge until after this exchange. Both sides then reviewed the charge. The trial court inquired if either side objected to the jury charge. Appellant said, "Oh, no."

The trial court gave appellant the opportunity to incorporate self-defense into the jury charge. He declined to have it included. After the trial court prepared the jury charge, appellant stated he had no objection to the charge as submitted. We perceive no difference between an affirmative waiver of admission of evidence and an affirmative waiver of a defensive issue in the jury charge. *Cf. Dean v. State,* 749 S.W.2d 80, 83 (Tex.Crim.App.1988) (an affirmative assertion of "no objection" to admission of evidence waives any error preserved by denial of motion to suppress); *Taylor v. State,* 820 S.W.2d 392, 395 (Tex.App.—Houston [14th Dist.] 1991, no pet.) (an affirmative waiver preserves nothing for appeal).

The trial court was not required to treat appellant differently than it would treat an attorney. The court called appellant's attention to the issue of self-defense as included in his voluntary statement. When appellant did not respond to the court's inquiry, the court asked if appellant only wanted the "plain murder" charge. Appellant answered that it was "just fine with me." Appellant, by this statement, invited the trial court to commit error, if it was error not to include self-defense in the charge. Additionally, after the trial court prepared the jury charge, it asked appellant if he had any objections. Appellant answered, no.

If an appellant cannot complain on appeal that the trial court erred in submitting his requested jury charge, he should not be allowed to complain on appeal that the trial court erred in not submitting a defensive issue which he affirmatively rejected. In either case, appellant cannot profit by that which he induced the trial court to do. *See Tucker,* 771 S.W.2d at 534; *Ex Parte Guerrero,* 521 S.W.2d at 614.

Because the trial court neither refused to give a requested jury charge nor gave an incorrect jury charge, *Almanza* does not apply. *See Almanza v. State,* 686 S.W.2d 157 (Tex.Crim.App.1985) (op. on State's mot. for reh'g). The *Almanza* court established the standard of review for properly objected-to error and unobjected-to error in the jury charge. It did not address affirmatively rejected jury charges. *See id.* at 171. We hold that when an appellant affirmatively rejects the trial court's offer of a defensive issue in the court's proposed jury charge, he cannot later complain on appeal that the trial

court erred in not including that charge. We overrule appellant's point of error number two.

## MEDICAL EXAMINER'S TESTIMONY

In his third point of error, appellant argues that the trial court erred in allowing the chief medical examiner to testify to his opinion of the cause of death. Appellant complains that the trial court denied his right to confront the doctor that did the autopsy.

### 1. Applicable Law

To preserve error for appellate review, a party must timely object in the trial court. TEX.R.APP.P. 52(a). The objection at trial must not differ from the objection on appeal. *Rezac v. State*, 782 S.W.2d 869, 870 (Tex.Crim.App.1990).

### 2. Application of Law to Facts

At trial, appellant objected to the chief medical officer testifying because only "the actual people that ... observed and witnesses [sic] the actual ... or had hands on and seen the actual alleged victim and had a part to do with the autopsy report [should testify]. No one other than the [one] ... whose signature is on the autopsy report can testify to the facts of this autopsy report." The trial court overruled appellant's trial objection. When the State offered the autopsy report into evidence, appellant stated, "No objection. Your honor."

On appeal, appellant does not complain of the admission of the autopsy report or of the reading of the autopsy report. He argues only that, by allowing the chief medical examiner to testify to the cause of death, the trial court denied him the right to confront and cross-examine the State's witnesses. Because appellant's point of error differs from his trial objection, he failed to preserve error. We overrule appellant's point of error number three.

We affirm the trial court's judgment.