**Charles Allen MEYER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 10–99–175–CR, 10–99–176–CR.**

Court of Appeals of Texas,
Waco.

Aug. 30, 2000.

Michael Logan Ware, Fort Worth, for appellant.

Tim Curry, Criminal Dist. Atty., Charles M. Mallin, Asst. Criminal Dist. Atty., Fort Worth, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## O P I N I O N

BILL VANCE, Justice.

After convicting Charles Meyer of two counts of aggravated sexual assault, his jury set his punishment, enhanced as a habitual offender, at 40 years' incarceration on each offense. He argues before us that the trial court erred when it denied his *pro se* motion to dismiss the indictment for violations of his Sixth Amendment right to a speedy trial. Even though his motion was filed *pro se* during the time he was represented by an attorney, we conclude that Meyer can complain about the court's ruling because the court exercised its discretion to consider it. We also find, however, that his complaint is not valid

because he has not shown a violation of his speedy-trial right. Thus, we will affirm his convictions.

## BACKGROUND

On June 19, 1997, Meyer was arrested for the offenses made the basis of these prosecutions. From that point forward he has been incarcerated. The court appointed an attorney to represent him on July 3, 1997. There was some delay in having a trial, and on October 6, 1998, his attorney filed a motion for a speedy trial in each cause. Each motion requested that the court "set this matter for trial forthwith," relief which the court ultimately granted. In early December 1998, Meyer wrote a letter to the court himself "asking that a trial date be set." The court acted on this request, writing in the margin of the letter "[Prosecuting Attorney], I want this case tried or disposed of ASAP," and directing that a copy of the letter be sent to the prosecuting attorney. Four and one-half months after his letter, on April 23, 1999, Meyer filed a *pro se* motion to dismiss the indictments, asserting his speedy trial right in each case. Within a week of these motions, a judge was appointed to preside over Meyer's trial, set to commence on May 17, 1999. On May 18, at the start of his trial, the court denied Meyer's *pro se* motions.

## MEYER'S APPEALS

Meyer complains about the trial court's denial of his *pro se* motions, asserting that they should have been granted. *See Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972); *State v. Munoz*, 991 S.W.2d 818, 821 (Tex.Crim. App.1999). The State has two replies: (1) Meyer cannot show that the court erred when it denied his *pro se* motions because the court was not required to allow him hybrid representation, and (2) the court's rulings were correct because his speedy-trial right was not violated.

### Ruling on a pro se motion

A defendant is not entitled to hybrid representation, *i.e.*, to proceed *pro se* and be represented by an attorney at the same time. *Scarbrough v. State,* 777 S.W.2d 83, 92 (Tex.Crim.App.1989); *Williams v. State,* 946 S.W.2d 886, 892 (Tex.App.—Waco 1997, no pet.). "Once an accused is represented by counsel, the trial court is entitled to look solely to the accused's counsel and is not required to consider *pro se* pre-trial motions which were filed when the accused was represented by counsel." *Hazelwood v. State,* 838 S.W.2d 647, 649 (Tex.App.—Corpus Christi 1992, no pet.). Thus, a represented defendant cannot require the court to consider his *pro se* motions. *Id.; Webber v. State,* 757 S.W.2d 51, 56 (Tex.App.—Houston [14th Dist.] 1988, pet ref'd); *Busselman v. State,* 713 S.W.2d 711, 714 (Tex.App.—Houston [1st Dist.] 1986, no pet.). On this basis, at least one court determined that the denial of a *pro se* motion filed when the defendant was represented by an attorney was not error. *Busselman,* 713 S.W.2d at 714. However, another court has concluded that if the court considers a *pro se* motion, even though it could not be required to do so, an erroneous denial of the motion may require that the conviction be reversed. *Froyd v. State,* 628 S.W.2d 866, 867 (Tex. App.—Corpus Christi 1982), *remanded without reference to the merits,* 633 S.W.2d 884 (Tex.Crim.App.1982), *on remand,* 654 S.W.2d 19 (Tex.App.—Corpus Christi 1983, no pet.).

We agree with the *Froyd* court. Although it is true that a defendant does not have a *right* to hybrid representation, the trial court may allow him to do so in the exercise of its discretion. *Scarbrough,* 777 S.W.2d at 92; *Hazelwood,* 838 S.W.2d at 649. By considering and ruling upon a *pro se* motion filed while the defendant is represented by an attorney, the trial court essentially allows the defendant hybrid representation for that one motion. Once the court does so, the motion filed *pro se* by the defendant is as valid and effective as any motion filed by his attorney. Thus, if the court *rules* on a *pro se* motion even though it did not have to consider that motion, its ruling is subject to review on appeal. We cannot find, then, that the trial court's rulings here were not error simply because the motions were filed by Meyer himself rather than his attorney, as the State urges us to do. Rather, we must consider the merits of Meyer's speedy trial claim.

### Merits of Meyer's speedy trial claim

When considering Meyer's speedy-trial claim, the trial court was required to weigh and balance four factors: (1) the length of the delay, (2) the reason for the delay, (3) Meyer's assertion of his speedy trial right, and (4) any prejudice to Meyer. *Munoz,* 991 S.W.2d at 821 (citing *Barker,* 407 U.S. at 514, 92 S.Ct. at 2182). To review the court's ruling on Meyer's motions, we apply a "bifurcated standard of review." *Id.* This means that we review issues of fact under an abuse-of-discretion standard, but review the legal principles involved *de novo. Id.* Because the court denied Meyer's motions, we must presume it resolved all disputed fact issues in the State's favor, and we are required to defer to any of these implied fact findings that the record supports. *See id.* Additionally, no hearing was held on Meyer's motions and no evidence directly related to his speedy-trial claim was presented. Thus, his ability to present his claim to us is severely handicapped by the lack of a record on which to construct his arguments.

### Length of delay

The length of the delay is referred to as a "triggering mechanism" for a speedy trial analysis; absent a "presumptively prejudicial" delay, the other *Barker* factors need not be considered. *Id.* A nearly twenty-three month delay is sufficient to trigger consideration of the other *Barker* factors. *See id.* at 822 (holding a seventeen-month delay sufficient to

trigger consideration of other *Barker* factors).

### Reason for delay

 Initially, the State has the burden of justifying the delay. *Emery v. State*, 881 S.W.2d 702, 708 (Tex.Crim.App. 1994); *Moreno v. State*, 987 S.W.2d 195, 199 (Tex.App.—Corpus Christi 1999, pet. ref'd). Different reasons for the delay are assigned different weights—an intentional delay for tactical reasons is weighed heavily against the State; a neutral reason, such as negligence or overcrowded courts, is weighed less heavily against the State; a valid reason is not weighed against the State at all; delay attributable to the defendant may constitute a waiver of the speedy trial claim. *Munoz*, 991 S.W.2d at 822. Because the State has the burden to demonstrate the reason for the delay, we must presume that no valid reason exists when the record is silent as to the cause of the delay. *Phillips v. State*, 650 S.W.2d 396, 400 (Tex.Crim.App. [Panel Op.] 1983).

 Because there was no hearing on Meyer's motions, the State was never called upon to articulate an explanation for the delay. The State now claims that "[i]t appears that a congested docket was the primary reason for the delay." It also urges that part of the delay is attributable to Meyer because he sought the appointment of additional counsel and attempted to remove the cases to federal court. However, Meyer's motion for the appointment of a second attorney was granted the same day it was filed so no delay can be attributed to that motion. Also, the proceedings were not stayed or halted

during the eight-day period in which Meyer's notice of removal was pending in the United States District Court. In fact, it was during this period that the judge who ultimately presided over his trial was assigned. Thus, there was no delay associated with Meyer's failed attempt to remove the cases to federal court.

There are no facts available to explain the delay in putting Meyer to trial. This factor, then, must be weighed against the State.[1]

### Assertion of the right

The record establishes that Meyer asserted his right to a speedy trial by asking for a trial via both motions and a letter to the court well before he asked the court to dismiss the indictment.[2] *See Ex parte McKenzie*, 491 S.W.2d 122, 123 (Tex.Crim. App.1973). The fact that he initially requested a trial strengthens his claim. *See Barker*, 407 U.S. at 531–32, 92 S.Ct. at 2192–93; *Munoz*, 991 S.W.2d at 825.

The State argues that the circumstances indicate that Meyer was more interested in avoiding trial than going to trial. However, much of its argument is based on facts not shown in the record (again, because no hearing was held on Meyer's motions). First, the State's assertion that Meyer "acquiesced" to his trial being "passed" five times is without support in the record. Second, the State's assertion that he did not file his motions to dismiss until "trial became a reality," is refuted by the trial judge's notation on the cover letter accompanying Meyer's motions directing that a copy be sent to the prosecuting attorney and to Meyer's attorney with the remark

1. As stated above, the trial court ruled on the motions without a hearing. It could thus be argued that this factor should not be weighed against the State because the State never had the opportunity to present any evidence of the cause of the delay. However, it is the State's burden to show the cause for the delay was not due to the State. If the State wanted to present evidence to explain the delay, the State should have objected to the trial court's rulings without giving it the opportunity to introduce evidence.

2. The motions and letter were not served on the State's attorney by Meyer. The same rules apply to a pro se defendant as apply to any attorney who represents a defendant. *McCray v. State*, 861 S.W.2d 405, 408 (Tex. App.—Dallas 1993, no pet.). However, the State failed to object to the absence of service and thus waived any error in the trial court's rulings on the merits of the requests.

that Meyer's "cases will be tried at the next setting." Moreover, there is no showing in the record as to when the "next setting" was fixed. Finally, the State faults Meyer for the time that passed between the filing of his motions and the court's consideration of them. However, the court's notation on the cover letter is dated April 23, the same day as the file mark on the letter and motions. Thus, Meyer made the court aware of his assertion well before it actually ruled on the motions.

Meyer timely and consistently asserted his right to a speedy trial. This factor should be weighed in his favor.

### Prejudice

■ Finally, we must consider any prejudice Meyer has suffered as a result of the delay in bringing him to trial. *Munoz,* 991 S.W.2d at 826. This factor is assessed in light of the three interests the speedy trial right protects: (1) preventing oppressive pretrial incarceration, (2) minimizing anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired. *Id.* Meyer is not required to show "actual prejudice," but has the burden to make a prima facie showing of prejudice. *Id.* If he makes a prima facie showing of prejudice, the burden shifts to the State to show that Meyer suffered "no serious prejudice beyond that which ensued from the ordinary and inevitable delay." *Id.* (quoting *McKenzie,* 491 S.W.2d at 123).

■ As to the first issue, "[w]hat is dispositive of 'this consideration' is that [Meyer] was incarcerated during the entire [twenty-three] month delay." *Id.* at 828. Under *Munoz,* the twenty-three month period which Meyer spent in jail awaiting trial constitutes oppressive pretrial incarceration. *Id.* On the second consideration, minimizing his pretrial anxiety and concern, he asserted in both his December 1998 letter and his April 1999 motions that he was suffering from "undue anxiety" and depression. Given the oppressive nature of his pretrial incarceration, we believe

that his uncontradicted assertions in his written submissions to the court establish that Meyer unduly suffered from the delay. *See Webb v. State,* No. 14–98–00407–CR, 2000 WL 64018, *4, —— S.W.3d ——, —— (Tex.App.—Houston [14th Dist.] Jan. 27, 2000, no pet. h.).

■ The final consideration in determining if the prejudice to the defendant caused by a delay in his trial weighs for or against his speedy trial claim is whether the delay impaired his defense. *Munoz,* 991 S.W.2d at 826. This is the most important consideration in the prejudice-to-the-defense factor of the speedy-trial analysis because "the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193.

■ Meyer claimed in his written submissions that his defense was impaired in two ways. First, he claimed that three "vital" defense witnesses had moved out of state and were no longer available for trial. "Before such a contention will amount to 'some showing of prejudice,' [Meyer] must show that the witnesses are unavailable, that their testimony might be material and relevant to his case, and that he has exercised due diligence in his attempt to find them and produce them for trial." *Harris v. State,* 489 S.W.2d 303, 308 (Tex.Crim. App.1973); *Harlan v. State,* 975 S.W.2d 387, 391 (Tex.App.—Tyler 1998, pet. ref'd). As in *Harris,* Meyer makes the claim of prejudiced-by-missing-witnesses solely through his written submissions which fail to address both the materiality and relevance of the missing witnesses and his efforts to find them. *See Harris,* 489 S.W.2d at 308. Thus, he cannot show that his defense was impaired by the lack of these witnesses. *Id.*

■ Meyer also claimed that his defense was impaired because the remaining defense witnesses had suffered from "inevitable loss of memory" during the delay. However, this "bare assertion of dim-

ming memories does not constitute some showing of an impairment to the defense." *Munoz,* 991 S.W.2d at 829 (internal quotations omitted). Rather, to show prejudice to his defense by memory losses, Meyer was required to show that the memory lapses were in some way significant to the outcome of his cases. *Id.* His claims of memory loss do not measure up to this standard. *Id.*

Although Meyer suffered some oppressive pretrial incarceration and undue anxiety, he did not make even a prima facie showing that his defense had been impaired by the passage of time resulting from the delay in his trial. Thus, his showing of prejudice is "minimal," and this factor should be weighed in favor of the State.

### Balancing the factors

The question is close. The delay, twenty-three months, borders on excessive, especially in light of the fact that Meyer was incarcerated the entire time. No valid reason for the delay has been proved by the State, and Meyer properly asserted his speedy trial right. However, the prejudice caused to him by the delay is minimal, and he has not shown that any of the prejudice he suffered flowed from an impairment to his defense. Balancing these factors, we conclude on the record before us that Meyer was not denied his right to a speedy trial.

### CONCLUSION

We have considered Meyer's complaint that his speedy trial right was violated when the trial court refused to dismiss the indictments against him. His ability to present this complaint to us is hampered by the fact that no hearing was held specifically on his motions to dismiss and, so, no evidence directly related to this issue has been presented to us. On this record, though, Meyer cannot show that the trial court erred when it refused to grant his motions to dismiss. Therefore, we con-

clude that his sole issue for review is without merit and affirm his convictions.