**Charles Allen MEYER, Petitioner,**

**v.**

**Douglas DRETKE, Director, Texas Department of Criminal Justice Correctional Institutions Division, Respondent.**

**No. 4:02–CV–552–A.**

United States District Court,
N.D. Texas,
Fort Worth Division.

Nov. 10, 2003.

Charles Allen Meyer, Iowa Park, TX, pro se.

Danny Duane Burns, Fort Worth, TX, for Petitioner.

James M. Terry, Jr., Austin, TX, Gretchen B. Merenda, Attorney General of Texas, Austin, TX, for Respondent.

## MEMORANDUM OPINION and ORDER

MCBRYDE, District Judge.

This is a petition[1] for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by Charles Allen Meyer, as petitioner, against Douglas Dretke, Director, Texas Department of Criminal Justice, Correctional Institutions Division, as respondent. After considering the record, briefs, and memoranda of the parties, the court concludes that the petition should be denied.

### I.

### Procedural History in This Court

On June 14, 2002, petitioner, who continues to be an inmate in the correctional system of the State of Texas, filed his petition in this court seeking relief from his two state court convictions and sentences on the grounds that he was denied a speedy trial and received ineffective assistance of counsel. The petition was referred to United States Magistrate Judge Charles Bleil for proposed findings, conclusions, and recommendation. On March 14, 2003, the magistrate judge issued his proposed findings, conclusions, and recommendation, recommending that the petition be denied.

The recommendation of the magistrate judge as to the claim of ineffective assistance of counsel was predicated on the magistrate judge's proposed conclusions that the state court's rejection of that claim did not involve an unreasonable application of the law to the facts, and that, in fact, petitioner was not denied effective

---

**1.** Title 28 U.S.C. § 2254 uses the term "application" rather than "petition," but the cus- tom, at least in this court, is to refer to the application as a "petition."

assistance of counsel. As to the speedy trial claim, the magistrate judge's proposed conclusion was that the state court's determination adverse to petitioner was reasonable, and did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established law.

The magistrate judge ordered petitioner to file objections, if any, to the proposed findings, conclusions, and recommendation by April 4, 2003. Petitioner timely filed his objections, objecting to all the proposed findings and conclusions and the recommendation of the magistrate judge.

As the court explained in the memorandum opinion and order the court signed April 3, 2003, the court was satisfied from a review of the record of the correctness of the magistrate judge's proposed conclusion that the ineffective assistance of counsel claim is unmeritorious. The court adopted the magistrate judge's findings, conclusions, and recommendation as to that claim.

However, the court concluded that petitioner's speedy trial claim required additional consideration. By order of April 3, 2003, Danny Burns, a member of the bar of this court, was appointed to represent petitioner as to that claim. Petitioner, through Mr. Burns, filed a memorandum in support of the speedy trial claim, to which respondent responded. The court ordered a hearing on the speedy trial claim.[2] After the hearing, the parties filed supplemental memoranda.

## II.

### Analysis

As the court previously has dealt with petitioner's ineffective assistance of coun-

sel claim, 4/3/03 Mem. Op. & Order at 2–3, the analysis is directed only to petitioner's speedy trial claim.

### A. Applicable Standards.

#### 1. Federal Habeas Standards.

■ A petitioner in custody pursuant to a state court judgment is only entitled to relief from this court on the ground that his incarceration is in violation of the Constitution or laws or treaties of the United States. See 28 U.S.C. § 2254(a). In order to ensure that state court convictions are given effect to the extent possible under law, a federal habeas court must give deference to decisions on the merits by a state court. See Bell v. Cone, 535 U.S. 685, 693, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); Williams v. Taylor, 529 U.S. 362, 403–04, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A claim is adjudicated on the merits if the state court's disposition of the case was substantive as opposed to procedural. See Neal v. Puckett, 286 F.3d 230, 235 (5th Cir.2002). This statutory scheme of deference is set forth in 28 U.S.C. § 2254(d) as follows:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determina-

2. The court does not rely on any evidence from the hearing, as petitioner has not met

the requirements of 28 U.S.C. § 2254(e)(2).

tion of facts in light of the evidence presented in the State court proceeding.

The Supreme Court has recently clarified what constitutes clearly established federal law. *See Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003). It is the governing legal principles, not the dicta of Supreme Court opinions, set forth at the time the state court renders its decision. *Id.* Additionally, a decision is "contrary to" clearly established federal law in two possible ways. *See* 28 U.S.C. § 2254(d)(1). The state court could arrive at a conclusion opposite to that reached by the Supreme Court on a question of law; or the state court could decide a case differently than the Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

In a review of a state prisoner's federal habeas petition, "a determination of a factual issue made by a State court shall be presumed to be correct,"[3] and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### 2. *Speedy Trial Standard.*

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial. . . ." U.S. CONST. amend. VI. This right to a speedy trial is as fundamental as any of the rights secured by the Sixth Amendment. *Moore v. Arizona*, 414 U.S. 25, 27–28, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973). The determination of whether a defendant has been deprived of his Sixth Amendment right to a speedy trial in-

volves a consideration of four factors: (1) the length of the delay; (2) the reason for the delay; (3) defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). As to the "prejudice" factor, the Supreme Court explained the interests to be protected as follows:

> Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.

*Id.* at 532, 92 S.Ct. 2182.

In *Doggett v. United States*, the Supreme Court explained the importance of the first (length of delay) inquiry, saying:

> The first of these is actually a double enquiry. Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay, [*Barker v. Wingo*,] 407 U.S. [514,] 530–531, 92 S.Ct. 2182, 33 L.Ed.2d 101 [(1972)], since, by definition, he cannot complain that the government has denied him a "speedy" trial if it has, in fact, prosecuted his case with customary promptness. If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim. *See id.*, at 533–534[, 92 S.Ct. 2182]. This latter

---

**3.** Respondent concedes that the presumption of correctness applies against the State as well as against the defendant, the only distinction being that "only a petitioner bears the

burden of rebutting that presumption by clear and convincing evidence." Resp't Dretke's Post–Hearing Br. at 5 n.6.

enquiry is significant to the speedy trial analysis because, ... the presumption that pretrial delay has prejudiced the accused intensifies over time.

505 U.S. 647, 651–52, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).

B. *Pertinent State Court Findings and Adjudications.*

All the pertinent findings and conclusions of the state courts relative to petitioner's speedy trial claim are found in the August 30, 2000, opinion of the state court of appeals resolving petitioner's appeal from the state trial court's denial of motions made by petitioner on the speedy trial issue. *See Meyer v. State,* 27 S.W.3d 644 (Tex.App.—Waco 2000, pet. ref'd). As the opinion of the court of appeals reflects, petitioner's convictions were for two aggravated sexual assault offenses, which, because of enhancement resulting from petitioner's status as a habitual offender, resulted in concurrent sentences of forty years' incarceration. The court of appeals found the following to be background facts pertinent to petitioner's speedy trial claim: [4]

On June 19, 1997, Meyer was arrested for the offenses made the basis of these prosecutions. From that point forward he has been incarcerated. The court appointed an attorney to represent him on July 3, 1997. There was some delay in having a trial, and on October 6, 1998, his attorney filed a motion for a speedy trial in each cause. Each motion requested that the court "set this matter for trial forthwith," relief which the court ultimately granted. In early December 1998, Meyer wrote a letter to the court himself "asking that a trial date be set." The court acted on this request, writing in the margin of the letter "[Prosecuting Attorney], I want this case tried or disposed of ASAP," and directing that a copy of the letter be sent to the prosecuting attorney. Four and one-half months after his letter, on April 23, 1999, Meyer filed a *pro se* motion to dismiss the indictments, asserting his speedy trial right in each case. Within a week of these motions, a judge was appointed to preside over Meyer's trial, set to commence on May 17, 1999. On May 18, at the start of his trial, the court denied Meyer's *pro se* motions.

*Id.* at 647.

The court of appeals concluded that the delay of nearly twenty-three months between the date of petitioner's arrest and the date of his trial was sufficient to trigger consideration of the other speedy trial factors set forth in *Barker v. Wingo.* The only other mention the court of appeals made of the length-of-the-delay factor was to say that "[t]he delay, twenty-three months, borders on excessive, especially in the light of the fact that Meyer was incarcerated for the entire time." *Meyer,* 27 S.W.3d at 651.

---

**4.** A legitimate argument could be made that the court of appeals did not have the authority to make findings of fact in deciding petitioner's direct appeal. *See Tex. Nat'l Bank v. Karnes,* 717 S.W.2d 901, 903 (Tex.1986); *Deleon v. State,* 105 S.W.3d 47, 49 (Tex.App.—El Paso 2003). Another puzzling feature of the opinion of the court of appeals is that at least some of its findings of fact appear to be without support in evidence before the court. *See Meyer v. State,* 27 S.W.3d 644, 651 (Tex. App.—Waco 2000, pet. ref'd) (where the court said that "no evidence directly related to [the speedy trial] issue has been presented to us."). However, because neither party has questioned the authority of the state court of appeals to make the findings of fact expressed in its opinion, the court is not concerning itself further with that question. Rather, since no attempt has been made to rebut the state court findings of fact, the court is presuming that the findings are correct, as contemplated by 28 U.S.C. § 2254(e)(1).

Concluding that the State had the burden to demonstrate the reason for the delay, the court found that the State did not meet its burden, saying: "There are no facts available to explain the delay in putting Meyer to trial." *Id.* at 649. The court concluded that the reason-for-delay "factor, then, must be weighed against the State." *Id.*

The state court also concluded that the assertion-of-the-right factor weighed in favor of petitioner, a conclusion that was based on the court's findings that:

The record establishes that Meyer asserted his right to a speedy trial by asking for a trial via both motions and a letter to the court well before he asked the court to dismiss the indictment.

. . . .

Meyer timely and consistently asserted his right to a speedy trial.

*Id.* at 649–50. As for the fourth factor, prejudice petitioner suffered as a result of the delay, the state court noted that the interests to be considered as to that factor are "(1) preventing oppressive pretrial incarceration, (2) minimizing anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired." *Id.* at 650. The court then made the following findings in favor of petitioner relative to the first two prejudice interests:

As to the first issue, "[w]hat is dispositive of 'this consideration' is that [Meyer] was incarcerated during the entire [twenty-three] month delay." . . . [T]he twenty-three month period which Meyer spent in jail awaiting trial constitutes oppressive pretrial incarceration. On the second consideration, minimizing his pretrial anxiety and concern, he asserted in both his December 1998 letter and his April 1999 motions that he was suffering from "undue anxiety" and depression. Given the oppressive nature of his pretrial incarceration, we believe that his

uncontradicted assertions in his written submissions to the court establish that Meyer unduly suffered from the delay.

*Id.* (internal citation omitted).

The state court concluded that whether the delay impaired Meyer's defense was "the most important consideration in the prejudice-to-the-defense factor of the speedy-trial analysis because 'the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'" *Id.* (quoting *Barker*, 407 U.S. at 532, 92 S.Ct. 2182). In analyzing all three prejudice considerations, the court said:

Although Meyer suffered some oppressive pretrial incarceration and undue anxiety, he did not make even a prima facie showing that his defense had been impaired by the passage of time resulting from the delay in his trial. Thus, his showing of prejudice is "minimal," and this factor should be weighed in favor of the State.

*Id.* at 651.

Balancing all of the *Barker* factors, the state court concluded:

The question is close. The delay, twenty-three months, borders on excessive, especially in light of the fact that Meyer was incarcerated the entire time. No valid reason for the delay has been proved by the State, and Meyer properly asserted his speedy trial right. However, the prejudice caused to him by the delay is minimal, and he has not shown that any of the prejudice he suffered flowed from an impairment to his defense. Balancing these factors, we conclude on the record before us that Meyer was not denied his right to a speedy trial.

*Id.* (internal citations omitted).

Petitioner filed a request for discretionary review with the Court of Criminal Appeals of Texas, which was denied. On

June 25, 1999, petitioner filed a state court petition for writ of habeas corpus as to each of his convictions, raising in each his speedy trial claim. Those petitions were denied on August 18, 1999, for the reason that his direct appeal was still pending. On October 22, 2001, petitioner filed a second set of petitions for writ of habeas corpus in the state court, again complaining that he was denied his constitutional right to a speedy trial. In denying those applications, the state court adopted the State's proposed findings of fact and conclusions of law in response to the applications, none of which are pertinent to the questions the court decides in the memorandum opinion and order. *In re Meyer,* No. 42,229–04 at 49–50; *In re Meyer,* No. 42,229–03 at 46–47. Before filing his petition in this court, petitioner had exhausted his state court remedies.

C. *Petitioner has not Demonstrated that the Decision of the State Court is Contrary to Clearly Established Federal Law as Determined by the Supreme Court.*

If the court were serving as a court of first impression on the speedy trial issue, the court probably would conclude that petitioner's constitutional right to a speedy trial was denied. The twenty-three month delay is far too long absent a compelling explanation from the State. Accepting as correct the findings and conclusions of the state court in favor of petitioner: The State provided no explanation for the delay; petitioner took the steps he reasonably could be expected to take to complain of the delay and to assert his right to a speedy trial; and, petitioner suffered prejudice in the form of oppression and anxiety by reason of the delay. Even after a trial judge had instructed the State to try petitioner as soon as possible, the State drug its feet for five-and-one-half months. The crimes were of a nature that the State should have been prepared to go to trial, and should have tried petitioner, in four months or less after he was taken into custody. Were this court allowed to weigh and balance the factors and interests to be protected by a speedy trial, it probably would conclude that the ones weighing in favor of petitioner outweigh petitioner's failure to adduce evidence that the delay prejudiced his defense at trial.

■ But, Congress made clear by 28 U.S.C. § 2254(d) that this court does not have the right to decide a habeas action on the basis of what this court perceives to be the outcome that should have been reached by the state court. Regrettably from petitioner's standpoint, the court cannot conclude that petitioner has satisfied the congressionally mandated standard.

The thrusts of petitioner's argument are that the state court of appeals denied him relief because he had not made an affirmative demonstration of prejudice and that such a decision is in direct contravention of the Supreme Court's holding in *Doggett v. United States* and *Moore v. Arizona.* Mem. of Law Regarding Speedy Trial Violation by the State Court at 8. Petitioner does not contend that the state court's decision is at variance with any other holding of the Supreme Court. While petitioner makes a persuasive argument in support of his position based on *Moore v. Arizona,* the court, after a thorough study of the matter, has concluded that petitioner is wrong.

In *Moore v. Arizona,* the Supreme Court held that the Arizona Supreme Court erred (predicated on its belief that a showing of prejudice to his defense was "essential to establish a federal speedy trial claim," 414 U.S. 25, 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973)) in deciding that the defendant had not shown that his constitutional right to a speedy trial had been

violated simply because he failed to make such a showing. The Supreme Court said that the Arizona court, which based its decision on its interpretation of the Supreme Court's holding in *Barker v. Wingo*, "was in fundamental error in its reading of *Barker v. Wingo* and in the standard applied in judging petitioner's speedy trial claim," and that "*Barker v. Wingo* expressly rejected the notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial." *Id.* at 26, 94 S.Ct. 188. After discussing the three interests that must be considered in evaluating the prejudice factor, the Supreme Court remanded the case to the Arizona Supreme Court to reassess petitioner's case under the standards mandated by *Barker v. Wingo*, *Dickey v. Florida*, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970), and *Smith v. Hooey*, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969).

The court has concluded that the decision of the state court of appeals in the instant action is not contrary to, and does not involve an unreasonable application of, any principle of federal law determined by the Supreme Court in *Moore*. Rather, the state court of appeals seems to have done precisely what the Supreme Court expected the Arizona Supreme Court to do upon remand—perform a balancing evaluation based on all the *Barker v. Wingo* factors in the course of determining whether the speedy trial claim is meritorious.

The court of appeals here did not decide that prejudice to petitioner's defense at trial was essential to establish his federal speedy trial claim. In other words, it did not commit the same error the Arizona Supreme Court made. Instead, the court of appeals treated the absence of a showing of prejudice to petitioner's defense to be only one of the factors to be considered in the overall balancing process. Nothing

in the decision of the Supreme Court in *Moore v. Arizona* purported to mandate the weight that should be given to any of the relevant factors, nor did the Court rule that the Arizona Supreme Court could not, in its balancing evaluation, conclude that the absence of a showing of prejudice to the defense outweighs the other speedy trial factors (even if a consideration of the reason-for-delay and assertion-of-the-right factors and the first two of the three interests the speedy trial right protects weigh in favor of the defendant).

Petitioner does not explain his assertion that the decision of the state court of appeals is in direct contravention of the Supreme Court's holding in *Doggett v. United States*. However, the court assumes that the petitioner had in mind the mentions in the *Doggett* opinion of a presumption of prejudice to the defense that can arise from an excessively long delay. In this regard, the Court said in *Doggett* that:

> Thus, we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other Barker criteria, it is part of the mix of relevant facts, and its importance increases with the length of delay.
>
> . . . .
>
> ... When the Government's negligence thus causes delay six times as long as that generally sufficient to trigger judicial review, and when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, nor persuasively rebutted, the defendant is entitled to relief.

505 U.S. at 655–58, 112 S.Ct. 2686 (footnotes and internal citations omitted).

An argument might be made that the language in *Doggett* means that, if there is a determination that there was an "excessive" delay, a presumption arises that the reliability of the trial was compromised, perhaps in ways that neither party can prove or identify. Even if the court were to read *Doggett* as establishing such a principle, the holding of the state court in the instant case would not be at variance with it. The state court did not conclude that the delay was "excessive" in the sense in which that word was used in *Doggett*. Rather, the language of the opinion of the court of appeals suggests that the court concluded that the delay was not excessive (saying "[t]he delay, twenty-three months, borders on excessive ...," *Meyer*, 27 S.W.3d at 651).

Because petitioner has failed to demonstrate that the decision of the state court of appeals was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, the court has concluded that his petition should be denied.[5]

### III.

### *ORDER*

For the reasons stated above,

The court ORDERS that the petition for writ of habeas corpus be, and is hereby, denied.

---

5. Petitioner does not contend that the state court decision was "based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding," as contemplated by 28 U.S.C. § 2254(d)(2).