IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00132-CR

 

Joseph Leon Jenkins,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 85th District Court

Brazos County, Texas

Trial Court No. 05-01101-CRF-85

 



DISSENTING Opinion



 

Jenkins’s third issue complains of the court’s
denial of his motion to dismiss for failure to provide a speedy trial, in
violation of the Sixth and Fourteenth Amendments.  See Barker v. Wingo,
407 U.S. 514, 515, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972).[1] 
With little analysis, the majority overrules the issue.  Believing that a
correct analysis of the Barker factors yields a different result, I respectfully
dissent.

The right to a speedy trial was designed: (1) to
prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern
of the defendant; and (3) to limit the possibility that the defense will be
impaired.  Id. at 532, 92 S.Ct. at 2193; Shaw v. State,
117 S.W.3d 883, 890 (Tex. Crim. App. 2003).  Of these, "the most serious
is the last, because the inability of a defendant adequately to prepare his
case skews the fairness of the entire system."  Barker, 407 U.S. at 532, 92 S.Ct. at 2193.  If a violation of the speedy trial right is established,
the only possible remedy is dismissal of the prosecution.  Dragoo v. State,
96 S.W.3d 308, 313 (Tex. Crim. App. 2003) (citing Strunk v. United States,
412 U.S. 434, 440, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973)).

Standard of Review

The Barker test has four non-exclusive
factors: (1) the length of the delay; (2) the reasons for the delay; (3) the
timeliness of the assertion of the right to a speedy trial; and (4) any
prejudice caused by the delay.  Id.  A bifurcated standard of review
applies: we review legal issues de novo but give deference to the trial court's
resolution of factual issues.  Kelly v. State, 163 S.W.3d 722, 726 (Tex.
Crim. App. 2005) (citing Zamorano v. State, 84 S.W.3d 643, 648 (Tex.
Crim. App. 2002)).  We "must uphold the trial court's ruling if it is
supported by the record and is correct under the applicable law."  Shaw,
117 S.W.3d at 889.  Applying these principles, I will examine the Barker
factors in "a difficult and sensitive balancing process."  See
Zamorano, 84 S.W.3d at 648 (citing Barker, 407 U.S. at 533, 92 S.Ct. at 2182).




Procedural Facts—Chronology

            The offense was alleged to have
occurred on January 6, 2005.  The following events in the trial court are
important in this speedy-trial inquiry.

·       
Counsel was appointed by a
magistrate on January 11, 2005.  

·       
An indictment asserting count
one was filed on February 17, 2005.

·       
A second indictment, which
added count two, was filed on April 21, 2005.  

·       
Appointed counsel filed a
motion to withdraw on May 6, 2005, which was set for hearing on June 16.  

·       
On June 23, the court
appointed new counsel for Jenkins.  

·       
Following that appointment,
trial was set for September 19.  

·       
On October 24, a motion
requesting a speedy trial was filed.  

·       
On January 12, 2006, a pro se
motion to dismiss “for lack of prosecution” was filed.

·       
The motions were heard and
denied on January 27, 2006.

·       
The case went to trial on
March 20, 2006.  

Length of Delay

            The length of delay is "a
triggering mechanism" for consideration of the remaining factors.  Id. at 530, 92 S.Ct. at 2192; Shaw, 117 S.W.3d at 889; Shea v.
State, 167 S.W.3d 98, 102 (Tex. App.—Waco 2005, pet. ref'd).  The delay is
measured from the date of arrest or the filing of the charging instrument,
whichever occurs first, to the date of trial.  Shaw, 117 S.W.3d at 889. 
A delay approaching one year is sufficient to trigger the Barker review.[2] 
 Id.   "[T]he delay that can be tolerated for an ordinary street
crime is considerably less than for a serious, complex conspiracy
charge."  Whitfield v. State, 137 S.W.3d 687, 690 (Tex. App.—Waco 2007, no pet.) (quoting Barker, 407 U.S. at 531, 92 S.Ct. at 2192).

            The delay was over 12 months from Jenkins’s
arrest on January 7, 2005, to the time of the hearing on the motion to dismiss
and over 14 months to the time of trial.  Jenkins says this is presumptively
prejudicial, the State does not seriously contest that assertion, and the
majority agrees.  I believe that if the right to a speedy trial has any
substance, the remaining factors must be analyzed in light of this presumptive
prejudice.

Reasons for the Delay

            "The State has the burden of justifying
the delay."  Shaw, 117 S.W.3d at 889 n.3.   Different weights are
assigned to the various reasons for the delay asserted by the State.  Id. at 889.

            The State first justifies the delay by
pointing to Jenkins’s inability to get along with his first appointed attorney,
as shown by the contents of the motion to withdraw.[3] 
Jenkins then told the court that he had retained an attorney, but another
attorney was later appointed.  Second, the State points to the “overcrowded
court docket.”  The case was set for trial in September of 2005.  Two capital
murder trials were held during October and November, and due to a mistrial, the
second case was retried in November and December.   Jury selection was
attempted in January and February of 2006 for this case, but failed both times;
the trial was held in March.

            Jenkins acknowledges the capital
murder trials but says that there is no record of a setting in this case
between September of 2005 and January of 2006.  He further points to the 40-day
delay in ruling on the motion to withdraw.  Finally, he says that, according to
the record, during the six months from appointment of substitute counsel until
the motion to dismiss was heard, there were only four criminal jury trial
settings in the court.  The docket sheet shows no trial or hearing activity in
this case from September 2005 to the date of trial.

The State concedes that this factor weighs against
the State, but “it does not weigh heavily.”  "[A] crowded court docket is
not a valid reason for delay and must be counted against the State, although
not heavily."  Id. at 890.  This factor weighs against the State.   The
majority agrees.

Assertion of Right to Speedy Trial

            There is no specific time frame in
which the defendant must assert his right to a speedy trial, and the burden of
protecting that right does not rest squarely with the defendant.  Whitfield,
137 S.W.3d at 691 (citing Zamorano, 84 S.W.3d at 651).  Nevertheless,
the defendant does have the responsibility to assert the right.  Id. (citing State v. Munoz, 991 S.W.2d 818, 825 (Tex. Crim. App. 1999)).  A
defendant’s not asserting his right does not amount to a waiver of the right
but results in making it difficult for the defendant to prove he was denied a
speedy trial.  Id.  Because how the defendant asserts this right is
closely related to the other three factors, "the defendant's assertion of
the right is entitled to strong evidentiary weight in determining whether the
defendant is deprived of this right."  Id.
(citing Zamorano, 84 S.W.3d at 651).

Jenkins filed his motion seeking a speedy trial on
October 24, 2005, after attempts to have his bail amount lowered.[4] 
He says that any delay in filing should be viewed in the context of attempts at
bail reduction and his re-indictment in April of 2005.  The State responds that
Jenkins never obtained a ruling on the October motion, filed a pro se motion on
January 12, 2006, and then filed another motion to dismiss at the final pretrial
hearing on January 27, 2006.

The majority says that Jenkins waited for ten months
to file the motion.  However, the minimum time that any Texas court has held
presumptively prejudicial under factor one is eight months—and the weight of
authority is closer to one year (see above), so a defendant would be wasting
his and the court’s time to file earlier.

All three motions were heard at the January
hearing and then denied.  Jenkins sought a trial before requesting dismissal,
and almost two months elapsed between the hearing on the motions and the trial.[5] 
Although the majority finds that this factor weighs against Jenkins, I believe
it is neutral.  After considering three factors, the delay remains
presumptively prejudicial.




Prejudice from Delay

            Prejudice is assessed in light of the
interests that the speedy trial right was designed to protect:  (1) to prevent
oppressive pretrial incarcerations, (2) to minimize anxiety and concern of the
accused, and (3) to limit the possibility that the defense will be impaired.  Id. (citing Meyer v. State, 27 S.W.3d 644, 650 (Tex. App.—Waco 2000, pet.
ref'd)).  The most important consideration is whether the defense was impaired
by the delay.  Id.  (citing Barker, 407 U.S. at 532, 92 S.Ct. at 2193).  With respect to the third interest, affirmative proof of
particularized prejudice is not essential to every speedy trial claim, because
"excessive delay presumptively compromises the reliability of a trial in
ways that neither party can prove or, for that matter, identify."  Dragoo,
96 S.W.3d at 314 (citing Doggett v. United States, 505 U.S. 647, 655, 112 S.Ct. 2686, 2692-93, 120 L.Ed.2d 520 (1992)).

            The defendant must make a prima facie
showing of prejudice.  Whitfield, 137 S.W.3d at 691.  Once that is done,
the burden shifts to the State to show that no serious prejudice occurred
beyond that from an ordinary, inevitable delay.  Id.

            The analysis of this factor is the
crux of my disagreement with the majority.  If "excessive delay
presumptively compromises the reliability of a trial in ways that neither party
can prove or, for that matter, identify" and “the burden shifts to the
State to show that no serious prejudice occurred beyond that from an ordinary,
inevitable delay,” then this factor must be weighed in Jenkins’s favor.

            At the hearing on the motion, Jenkins
introduced the death certificate for his mother, who had died on December 23,
2005, while he was incarcerated and awaiting trial.  She was, he says, his
witness at a possible punishment hearing to prove that he had not been
convicted of a felony in Texas or any other state.  He said that he suffered
“mental strife” in losing his mother while incarcerated.  He also points to a
letter he wrote to the trial judge in June of 2005 as reflecting his anxiety
and concern by specifically referring to his mother’s illness and his need to
support her and his newborn child and take his  mother to doctor’s
appointments.  The letter also relates that he had a job awaiting his release. 
Thus, he made a prima facie showing of prejudice.  See id.

Addressing the three interests, the State
acknowledges that Jenkins was incarcerated from arrest to trial.  That State
says that, although the June letter constitutes “some evidence” of anxiety over
pending charges, proof of anxiety and concern over the delay is missing. 
Concerning the third interest, the State says that Jenkins has not shown that
his mother’s testimony was “exculpatory or otherwise beneficial,” and that an
aunt testified about his eligibility for probation.  The State urges that the
prejudice factor weighs heavily against Jenkins.[6]

            The State concedes Jenkins was in jail
from arrest to trial and that the evidence shows “some anxiety” due to the
delay.  Did the State show that no serious prejudice occurred beyond that from
an ordinary, inevitable delay?  I believe that it did not.  The defendant—not
the State—gets to choose which witnesses to call on his behalf at punishment. 
Thus, I disagree with the State and the majority.  This factor weighs in
Jenkins’s favor.




Analysis

            This is a difficult and sensitive
balancing process.  The first factor, length of the delay, triggers a review of
the remaining factors and established presumptive prejudice.  The second factor,
reasons for the delay, weighs slightly against the State, and the third factor,
timeliness of the demand, is neutral.  Thus, because under the fourth factor,
the most important factor, the burden shifted to the State to show that no
serious prejudice occurred beyond that from ordinary, inevitable delay, I am
persuaded that the issue should be sustained.  The undisputed facts[7]
that Jenkins was incarcerated for over a year awaiting trial without much
activity in his case, that he expressed anxiety and concern while awaiting
trial, and that his case at punishment was impaired to some degree when his
mother died four months before trial, all demonstrate that in the balancing
process the fourth factor is sufficient to require a finding of a violation of
the right to a speedy trial.  Issue three should be sustained.

CONCLUSION

            Issue three is dispositive of the
appeal, so I do not address the remaining issues.  I would sustain Jenkins’s
speedy trial issue, reverse the judgment, and remand the cause to 
the trial court with instructions to dismiss the indictment.  Because the
majority does otherwise, I respectfully dissent.

 

 

BILL VANCE

Justice

 

Dissenting
opinion delivered and filed November 7, 2007

Publish









[1] Jenkins also refers to the Texas Constitution and
the Code of Criminal Procedure but concedes that Texas courts use the Barker
test for a speedy trial analysis.  Tex.
Const. art. I, § 10; Tex. Code
Crim. Proc. Ann. art. 1.05 (Vernon 2005); Harris v. State, 827
S.W.2d 949, 956 (Tex. Crim. App. 1992).





[2]
One case observed that any delay of eight
months or longer is presumptively unreasonable and sufficient to trigger review
of the remaining factors.  Harris, 827 S.W.2d at 956 (citing 2 LaFave
& Israel, Criminal Procedure § 18.2(b) (1984)).

 





[3]
“Defendant’s attitude towards counsel
renders an ongoing attorney/client relationship difficult if not impossible.”





[4]
See Jenkins v. State, Nos. 10-05-00147-CR, 10-05-00148-CR, and
10-05-00149-CR, 2006 WL 348716 (Tex. App.—Waco Feb. 15, 2006, no pet.) (mem.
op.) (not designated for publication).

 





[5]
“The defendant's assertion of his speedy
trial right, then, is entitled to strong evidentiary weight in determining
whether the defendant is being deprived of the right.  We emphasize that
failure to assert the right will make it difficult for a defendant to prove
that he was denied a speedy trial.”  Barker, 407 U.S. at 531-32, 92 S.Ct. at 2192.               





[6] An appellate court reviewing a trial court's
ruling on a motion to dismiss for want of a speedy trial must do so in light of
the arguments, information, and evidence that was available to the trial court
at the time it ruled.  Shaw v. State, 117 S.W.3d 883, 889 (Tex. Crim.
App. 2003) (citing Dragoo v. State, 96 S.W.3d 308, 313 (Tex. Crim. App.
2003)).





[7] I acknowledge that “the trial court is permitted
to disbelieve evidence so long as there is a reasonable articulable basis for
doing so.”  Kelly v. State, 163 S.W.3d 722, 727 (Tex. Crim. App. 2005). 
Here, however, there is no articulable reason to disbelieve that Jenkins was
incarcerated at all times prior to trial—the State concedes that, nor that his
letter expressed anxiety and concern—the letter speaks for itself, nor that the
loss of his mother’s testimony impaired his defense, however slight.