In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00027-CV


______________________________




LINDA GALE HURLEY, Appellant



V.



WOOD COUNTY ELECTRIC COOPERATIVE, INC., Appellee




 


On Appeal from the 402nd Judicial District Court


Wood County, Texas


Trial Court No. 2006-855




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Linda Gale Hurley, appearing pro se, (1) brings this appeal from a condemnation proceeding
brought by Wood County Electric Cooperative (WCEC). WCEC filed a petition to condemn
approximately 2.68 acres of Hurley's property to establish a 100-foot-wide easement for the erection
of a transmission line. The trial court appointed special commissioners to assess damages; the
damages were assessed at $4,352.00. (2) Hurley, who was represented by counsel in the trial court,
filed objections to the special commissioners' award, and a trial on the merits was held. The trial
court awarded Hurley $4,200.00 in damages. Hurley raises nine issues on appeal. Hurley's
complaints are inadequately briefed and could be overruled as such. See Tex. R. App. P. 38.1;
Phippen v. Deere & Co., 965 S.W.2d 713, 716 (Tex. App.--Texarkana 1998, no pet.). In the interest
of justice, we will attempt to address Hurley's complaints.

 Hurley contends she was denied her right of being represented by an attorney of her own
choice. In her brief, Hurley "objects to Plaintiff's statement that 'Linda Gale Hurley appeared in
person through Attorney of Record.'" Hurley references her motion for new trial, (3) which states the
attorney who represented her at trial, Randy Taylor, took "it upon himself to begin the Wood County
Electric Cooperative trial without Defendant's authority." Hurley claims she had retained Mark
Falcon, who filed the original answer in this case, to represent her. In her motion for new trial,
Hurley alleges that Falcon and Taylor, who shared office space, had a dispute about who represented
her. (4) Hurley states she had not communicated with Taylor in a number of years and had instructed
Falcon that he was the attorney in charge. According to the motion for new trial, Hurley did not
receive notice of the trial setting and was not personally present until after WCEC had presented its
case. The docket sheet indicates that Hurley was not personally present at the start of the trial but
that she did testify during the presentation of her case. The judgment states Hurley "appeared in
person and through attorney of record." 

 There is no indication in the record that Hurley requested a hearing on either of her motions
for new trial. No hearing was held on Hurley's motions for a new trial, and they were overruled by
operation of law. When the motion for new trial requires presentation of evidence, a party must
request a hearing on that motion in order to preserve error for appeal. See Tex. R. App. P. 33.1(b)
(overruling motion for new trial by operation of law does not preserve complaint that requires
evidence to be taken); Garcia v. Arbor Green Owners Ass'n, 838 S.W.2d 800, 801 (Tex.
App.--Houston [1st Dist.] 1992, writ denied). Because Hurley's complaint required the presentation
of evidence and no hearing was requested or held, Hurley's complaint that she was denied
representation of counsel by an attorney of her choice is not preserved for our review. 

 Hurley complains that the damages awarded are insufficient. According to Hurley, the
property condemned is worth $200,000.00. When a defendant objects to findings of the special
commissioners, a trial de novo is conducted in the trial court. PR Invs. & Specialty Retailers, Inc.,
251 S.W.3d at 476. The record on appeal, though, lacks a reporter's record. 

 If the record is incomplete and the appellant has not complied with Rule 34.6(c), (5) the
appellate court must presume that the omitted evidence supports the judgment or order from which
the appeal is taken. In re Estate of Arrendell, 213 S.W.3d 496, 503 (Tex. App.--Texarkana 2006,
no pet.); Hilton v. Hillman Distrib. Co., 12 S.W.3d 846, 848 (Tex. App.--Texarkana 2000, no pet.);
CMM Grain Co. v. Ozgunduz, 991 S.W.2d 437, 439-40 (Tex. App.--Fort Worth 1999, no pet.); see
Bennett v. Cochran, 96 S.W.3d 227, 230 (Tex. 2002); Schafer v. Conner, 813 S.W.2d 154, 155 (Tex.
1991). Because there is no reporter's record, we must presume the omitted portions of the record
contain sufficient evidence to support the judgment. Hurley's issues concerning the sufficiency of
the damage award are overruled. 

 In five of her issues, Hurley complains of decisions by the Texas Public Utility Commission
(PUC). These complaints can be divided into two main categories: 1) complaints about the
decisions made by the PUC, and 2) complaints that WCEC has deviated from the design and distance
requirements approved by the PUC. 

 Hurley appears to be claiming the PUC erred in granting the certificate of convenience and
necessity for the project in question. According to Hurley, the project "favors City of Dallas and
places hardship on the member Linda Hurley." Hurley attached several incomplete and uncertified
documents related to hearings on WCEC's application for a certificate of convenience and necessity
for the Dallas Water Utilities 69/138kV Double Circuit Transmission Line Project in Wood County
with PUC Docket 30254. Any appeal of the PUC's decision in that administrative hearing must have
been sought in an appeal from the PUC's decision after exhausting administrative remedies. See
Tex. Gov't Code Ann. § 2001.171 (Vernon 2000); see also, e.g., Tex. Dep't of Protective &
Regulatory Servs. v. Mega Child Care, Inc., 145 S.W.3d 170, 172 (Tex. 2004) (holding in absence
of express statutory language prohibiting judicial review, person may obtain judicial review of
administrative action under Administrative Procedure Act if action adversely affects a vested
property right or otherwise violates a constitutional right); Dunn v. PUC, 246 S.W.3d 788, 791 (Tex.
App.--Austin 2008, no pet.) (appeal from decision of PUC). Hurley cannot collaterally attack a
decision of the PUC in an appeal from a condemnation proceeding--particularly when the PUC has
not even been made a party to the lawsuit. Error, if any, committed by the PUC is not before this
Court in this appeal.

 Hurley also argues WCEC has failed to follow the "required distance by the PUC" and has
announced it does not intend to construct the facilities as described and approved by PUC Docket
number 30254. (6) The allegation that WCEC has failed to follow the design approved by the PUC
appears to be a challenge to the authority of WCEC's authority to exercise its power of eminent
domain. The allegation that WCEC has failed to follow the required distance could be interpreted
as either a challenge to the authority of WCEC to condemn the property or as a challenge to the
sufficiency of the damages. Hurley argues that the 100-foot easement is insufficient given that the
distance required for prudent avoidance (7) "is 300 feet or 500 feet." The record does not establish that
the distance required for prudent avoidance in this case is 300 feet or more. (8) Further, Hurley does
not cite any authority for the proposition that WCEC must obtain an easement identical to the
distance required for prudent avoidance. To the extent this allegation is a challenge to the
sufficiency of the damages, we must presume, due to a lack of a reporter's record, the evidence of
damages is sufficient. To the extent Hurley challenges the authority of WCEC to condemn the
property, Hurley conceded WCEC had authority to condemn the property in her original answer in
the trial court.

 Finally, Hurley argues WCEC failed to purchase her property through "negotiated
agreement." We note that the condemning authority has the burden of pleading and proving that it
was unable to reach an agreement with the landowner before initiating the condemnation proceeding. 
See Hubenak v. San Jacinto Gas Transmission Co., 141 S.W.3d 172, 180-83 (Tex. 2004). The
unable-to-agree requirement, however, is not jurisdictional. Id. at 184. WCEC pled that it was
unable to reach an agreement with Hurley as to the amount of damages. In the absence of a reporter's
record, we must presume WCEC also proved it was unable to reach an agreement with Hurley. 

 For the reasons stated, we affirm the judgment of the trial court.






 Jack Carter

 Justice


Date Submitted: September 18, 2008

Date Decided: September 26, 2008

1. The law is well settled that "[a] party proceeding pro se must comply with all applicable
procedural rules" and is held to the same standards as a licensed attorney. Weaver v. E-Z Mart
Stores, Inc., 942 S.W.2d 167, 169 (Tex. App.--Texarkana 1997, no pet.). "On appeal, as at trial,
the pro se appellant must properly present its case." Strange v. Cont'l Cas. Co., 126 S.W.3d 676,
678 (Tex. App.--Dallas 2004, pet. denied). We review and evaluate pro se pleadings with liberality
and patience, but otherwise apply the same standards applicable to pleadings drafted by lawyers. 
Foster v. Williams, 74 S.W.3d 200, 202 n.1 (Tex. App.--Texarkana 2002, pet. denied). 
2. We note the award of the board of special commissioners is normally inadmissible. PR Invs.
& Specialty Retailers, Inc. v. State, 251 S.W.3d 472, 476 (Tex. 2008); State v. Hilton, 412 S.W.2d
41, 42 (Tex. 1967). Since we do not have a reporter's record, it is not clear whether the award was
introduced into evidence--much less whether the evidence was objected to.
3. Hurley filed two motions for new trial, but does not distinguish between the motions in her
brief. Our discussion references her motion titled "Motion for New Trial." Hurley's other motion
for new trial, titled "Request New Trial On Motion Of Objection," repeats some of the allegations
contained in the first motion and makes additional allegations which do not concern her claim that
she was denied representation by counsel of her choice. 
4. The record shows a certificate of written discovery was filed October 12, 2007, noting both
Taylor and Falcon as attorneys of record, at the same address and telephone number. Taylor filed
a motion for continuance containing a certificate of conference which stated that Falcon contacted
the opposing attorney, who agreed to a one-day continuance. 
5. We note the Texas Rules of Appellate Procedure now provide for the use of a partial record. 
See Tex. R. App. P. 34.6(c). If Rule 34.6(c) is properly invoked, we must presume that the record
is the entire record for purposes of reviewing stated issues, even if the issue complains of the
insufficiency of evidence to support a specific finding. See id.; Furr's Supermarkets, Inc. v. Bethune,
53 S.W.3d 375, 380 (Tex. 2001). Hurley, though, failed to successfully traverse the rule. Under
Rule 34.6(c)(1), "[i]f the appellant requests a partial reporter's record, the appellant must include in
the request a statement of the points or issues to be presented on appeal and will then be limited to
those points or issues." Tex. R. App. P. 34.6(c)(1). The record in this case does not contain a
statement of points. 
6. Hurley fails to provide any citation for the quotation used in her brief. Hurley may be
referencing what appears to be a typographical error in the original petition in which WCEC states
"and not intends to construct the facilities as described and approved by the PUC." No pleading
defect was raised in the trial court or argued on appeal. We note that not all design deviations will
deprive the trial court of jurisdiction in condemnation proceedings. See State v. Brown,
No. 05-0236, 2008 Tex. LEXIS 756 (Tex. Aug. 29, 2008) (publication status pending). Further, the
record, which lacks a reporter's record, contains no evidence that WCEC has deviated from the
design approved by the PUC.
7. The rules of the PUC define "prudent avoidance" as the "limiting of exposures to electric
and magnetic fields that can be avoided with reasonable investments of money and effort." 16 Tex.
Admin. Code Ann. § 25.101 (2008), available at http://info.sos.state.tx.us/pls/pub/readtac
$ext.viewtac.
8. Hurley has attached a letter from the PUC and other documents to her brief in an attempt
to establish the distance required for prudent avoidance. We cannot consider documents, that are
not part of the record, attached as appendices to briefs. WorldPeace v. Comm'n for Lawyer
Discipline, 183 S.W.3d 451, 465 n.23 (Tex. App.--Houston [14th Dist.] 2005, pet. denied). Without
a reporter's record, we must presume the record supports the trial court's decision.


 defense is weighed. In determining whether the constitutional
right to a speedy trial has been violated, four factors are considered: 1) the length of the
delay; 2) the reason(s) for the delay; 3) the defendant's assertion of his right; and 4)
prejudice to the accused. Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d
101, 116-17 (1972); State v. Munoz, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999); Meyer
v. State, 27 S.W.3d 644, 648 (Tex. App.-Waco 2000, pet. ref'd). The balancing test
requires weighing case by case the conduct of both the prosecution and the defense. No
single factor as outlined in Barker is a necessary or sufficient condition to the finding of a
speedy trial violation. The related factors must be considered together with such other
circumstances as may be relevant. Munoz, 991 S.W.2d at 821. The appropriate standard
of appellate review is a bifurcated one, i.e., an "abuse of discretion" standard for the factual
determinations of the trial court, and a "de novo" standard for the legal components of the
trial court's determination. Id.; see also Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997); Johnson v. State, 954 S.W.2d 770, 771 (Tex. Crim. App. 1997). 

 Length of Delay. The length of the delay is considered a "triggering" mechanism for
the analysis of the other Barker factors. Munoz, 991 S.W.2d at 821-22. The delay is
measured from the time the defendant is formally accused or arrested. United States v.
Marion, 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468, 479 (1971); Hull v. State, 699
S.W.2d 220, 221 (Tex. Crim. App. 1985); Jones v. State, 944 S.W.2d 50, 53 (Tex.
App.-Texarkana 1997, pet. ref'd). Delays of two years and three months (Hull, 699 S.W.2d
at 221), seventeen months (Munoz, 991 S.W.2d at 822), and twenty-three months (Meyer,
27 S.W.3d at 648-49), have been held sufficient to trigger the analysis of other Barker
factors. This Court has determined that any delay over eight months is presumptively
unreasonable, i.e., triggers consideration of other factors. Jones, 944 S.W.2d at 53.

 Mitchell was indicted for the offense of possession of a deadly weapon in a penal
institution on July 23, 1998. (1) Jury selection for Mitchell's trial began on Tuesday,
December 28, 1999, and the presentation of evidence started on December 29, 1999. 
This is sufficient delay to warrant a consideration of other Barker factors.

 Reason(s) for the Delay. Barker discusses three categories of delay and their effect
on the court's determination: 1) deliberate attempts by the prosecution to delay the trial
in order to hamper the defense are weighed heavily against the prosecution; 2) more
neutral reasons, such as negligence by the state, or overcrowded dockets, are weighed
less heavily against the prosecution, but are still considered because the ultimate
responsibility for these circumstances lies with the state and not the defendant; and 3) valid
reasons for delay, such as a missing witness. Barker, 407 U.S. at 530-31; see Guajardo
v. State, 999 S.W.2d 566 (Tex. App.-Houston [14th Dist.] 1999, pet. ref'd). Of course,
delay caused by actions of the defendant is not counted against the prosecution. 
Steinmetz v. State, 968 S.W.2d 427, 434 (Tex. App.-Texarkana 1998, no pet.). An
accused may lose his or her entitlement to the speedy trial safeguard when he or she
shares responsibility for the delay. Love v. State, 909 S.W.2d 930, 947 (Tex.
App.-El Paso 1995, pet. ref'd).

 The record does not show any requested continuances or other delays caused by
the State. Mitchell has failed to demonstrate that any time elapsing between the indictment
and the trial was due to any act or omission by the State. On the other hand, at a pretrial
hearing held the day before trial, Mitchell stated on the record that he had filed forty-two
pleadings in this case. While we cannot fault an accused individual for filing meritorious
pretrial motions, we question the necessity for this large number of motions in this kind of
case, where the facts are straightforward and the issues clear. The trial court's dealing
with this many pretrial motions undoubtedly contributed to the delay in this case to some
extent. A sampling of these motions includes: a motion for self-representation; a motion
to recuse the trial judge; a challenge to the composition of the grand jury; request for
appointment of a psychologist; three motions in limine; and three motions to quash the
indictment.

 Again, we do not question the legitimacy of these motions, but merely point out that
each required a formal hearing by the trial court which necessarily contributed to part of the
delay, and it would be unfair to credit any such delay to the State. Finally, the defense was
granted one continuance which resulted in a delay of two weeks. This continuance should
not be counted against the State for speedy trial purposes. 

 Defendant's Assertion of His Right to a Speedy Trial. Mitchell filed a "Motion for
Fast & Speedy Trial" pro se on January 27, 1999. Again, on September 24, 1999, he filed
a motion to dismiss for violation of "Fast and Speedy Trial Act" pro se. Mitchell clearly
asserted his right to a speedy trial.

 Prejudice to the Accused. In his motion for a speedy trial, Mitchell claimed prejudice
from the delay due to witnesses who could no longer be located or whose memory would
be impaired due to the lapse of time and that certain tangible evidence favorable to him
would be lost or destroyed. However, there is nothing in the record to substantiate these
claims, and Mitchell fails to explain in his brief how these matters caused him prejudice. 
He fails to point to any specific witness he claims suffered memory loss due to any delay,
nor does he name-at the pretrial hearing, at trial, or in his brief-any witness he wanted to
call but was unable to because of the delay. He also failed, at both the pretrial hearing and
at trial, to point to any other evidence that would have been helpful to him that he was
unable to produce at trial because of the delay. Even assuming an unreasonable delay,
Mitchell has failed to establish any resulting prejudice to his case.

 The trial court did not abuse its discretion in overruling his motion. This issue is
overruled.

Ineffective Assistance of Counsel

 In Mitchell's fourth issue, he complains, generally, about ineffective assistance of
counsel. As a part of this same issue, he also complains that he was denied his right to
self-representation and complains of this Court's requirement that he confine his brief to
no more than fifty pages. We will address the self-representation and briefing page limit
complaints first, then respond to Mitchell's claim of ineffective assistance of counsel. 

 Self-representation. Mitchell contends his right to self-representation was violated
because he was forced to accept representation by counsel. The Sixth and Fourteenth
Amendments to the United States Constitution guarantee that a person brought to trial in
any state or federal court may dispense with counsel and make his or her own defense. 
Moore v. State, 999 S.W.2d 385, 396 (Tex. Crim. App. 1999), cert. denied, 530 U.S. 1216,
120 S.Ct. 2220, 147 L.Ed.2d 252 (2000). As stated in the leading case of Faretta v.
California:

 Personal liberties are not rooted in the law of averages. The right to defend
is personal. The defendant, and not his lawyer or the State, will bear the
personal consequences of a conviction. It is the defendant, therefore, who
must be free personally to decide whether in his particular case counsel is
to his advantage. 

 

422 U.S. 806, 834, 95 S.Ct. 2525, 45 L.Ed.2d 562, 581 (1975). However, the right to
represent oneself will not attach until it is clearly and unequivocally asserted. Funderburg
v. State, 717 S.W.2d 637, 642 (Tex. Crim. App. 1986); Cain v. State, 976 S.W.2d 228, 235
(Tex. App.-San Antonio 1998, no pet.). The question of self-representation was
addressed in a pretrial hearing held the day before trial. There, the trial court warned
Mitchell that he would be very unwise not to accept counsel to advise him about the
admissibility of evidence and to preserve any trial court error for appeal. After being
warned, Mitchell unequivocally stated to the trial court that he would accept counsel. This
contention is overruled.

 Length of Brief. Mitchell complains this Court required his brief to be no more than
fifty pages in length. This requirement was made pursuant to Tex. R. App. P. 38.4, which
specifically limits appellants' briefs to "no longer than 50 pages." While we may, on proper
motion under the rule, allow longer briefs, Mitchell did not file such a motion. A party
proceeding pro se must comply with all applicable procedural rules. Weaver v. E-Z Mart
Stores, Inc., 942 S.W.2d 167, 169 (Tex. App.-Texarkana 1997, no writ).

 Ineffective Assistance of Counsel. When confronted by a claim of ineffective
assistance, the two-pronged analysis of Strickland (2) is utilized to determine whether the
accused did not receive constitutionally effective assistance of counsel. Under the first
prong of the Strickland test, an appellant must show that counsel's performance was
deficient, i.e., show that counsel made errors so serious that counsel was not functioning
as the counsel guaranteed by the Sixth Amendment. To be successful in such a claim, an
appellant must show that counsel's representation fell below an objective standard of
reasonableness. Under the second prong, an appellant must show that the deficient
performance jeopardized his defense. The appropriate standard for judging prejudice
requires an appellant to show there is a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have been different. A
reasonable probability is a probability sufficient to undermine confidence in the outcome. 
In order to prevail, an appellant must prove both prongs by a preponderance of the
evidence. The review of defense counsel's representation at trial is highly deferential. The
appellate court engages in a strong presumption that counsel's actions fell within the wide
range of reasonably professional assistance. The appellant has the burden of overcoming
the presumption that under the circumstances the challenged action might be considered
sound trial strategy. Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000); see Smith
v. State, 40 S.W.3d 147 (Tex. App.-Texarkana 2001, no pet.).

 On this direct appeal, Mitchell challenges numerous actions and inactions of trial
counsel as demonstrating ineffective assistance. Specifically, Mitchell points to counsel's
failure to: 1) file a motion to dismiss on speedy trial grounds; 2) obey a letter sent by
Mitchell; 3) examine the prosecutor's file; 4) call an expert witness; 5) admit into evidence
certain defense exhibits; and 6) obtain hearings on certain pretrial motions, including a
motion to quash the indictment, a motion for an examining trial, and a motion for a hearing
on the defense of entrapment. None of Mitchell's contentions is supported by the record. 
Where a record is not developed regarding the reasoning behind criticized actions or
inactions of counsel, an appellant fails to overcome the strong presumption that counsel's
actions were proper. Lagaite v. State, 995 S.W.2d 860, 864 (Tex. App.-Houston [1st Dist.]
1999, pet. ref'd); see also Thompson v. State, 9 S.W.3d 808, 813 n.5 (Tex. Crim. App.
1999). 

 In addition, we have reviewed the record of the pretrial hearing, and that record
shows most, if not all, of the pretrial motions, including those filed by Mitchell's counsel as
well as those filed by Mitchell pro se, were discussed and ruled on at this hearing. 
Significantly, Mitchell has not informed this Court of any particular motion not raised by
counsel or how he was prejudiced by any such omission. No prejudice has been shown. 
The second prong of Strickland has also not been satisfied. 

 Other ineffective assistance claims by Mitchell directly implicate the trial strategy of
defense counsel. Included here are Mitchell's contentions that: 1) counsel undermined
Mitchell's defense by making certain "concessions" with the prosecutor; 2) counsel failed
to object to the State's introduction of extraneous offenses in the form of disciplinary
reports; and 3) counsel erred in calling Willie Green, an inmate, as a witness. However,
as noted earlier, there is nothing in the record to reflect counsel's trial strategy in making
his or her decisions on these matters. When the record is silent as to counsel's reasons
for his or her actions or inactions, and plausible explanations exist, the appellate court
should presume that trial counsel made all significant decisions in the exercise of
professional judgment. Valdes-Fuerte v. State, 892 S.W.2d 103, 112 (Tex.
App.-San Antonio 1994, no pet.). 

 Concerning Mitchell's claim of ineffective assistance by his own counsel's inquiry
into his prior disciplinary violations, we note that when the accused in a criminal case
voluntarily testifies before a jury, he is subject to the same rules governing cross-examination as any other witness. This is to say that he may be impeached, contradicted,
discredited, and attacked in the same manner as any other witness. Bryan v. State, 837
S.W.2d 637, 643 (Tex. Crim. App. 1992). However, Tex. R. Evid. 608(b) states that
specific instances of a witness' conduct, for the purpose of supporting or attacking the
witness' credibility, may not be inquired into on cross-examination of the witness or proved
by extrinsic evidence, except conviction of a crime as provided in Tex. R. Evid. 609. This
prohibition would preclude an inquiry in this case into Mitchell's prior prison disciplinary
record. In United States v. Tomaiolo, 249 F.2d 683 (2d Cir. 1957), the federal court of
appeals held that, notwithstanding the defendant taking the stand in his own behalf, it was
error for the judge to permit him to be cross-examined by the prosecutor concerning his
breaches of prison discipline during his nine years of incarceration:

 Nor did the defendant by testifying put his general character in issue. By
taking the stand the defendant elected to be treated as any other witness,
viz. he laid his credibility open to attack. Although a prosecutor may bring in
evidence as to the truth and veracity of a defendant upon cross-examination,
he is not at liberty to attack his general character. The general character of
a defendant is put in issue only when he calls witnesses to testify to his
reputation in general. The testimony of the defendant about his parole, and
the circumstances thereof, did not "open the door" for the prosecutor's
questions. . . .

 

 For the same reasons, questions regarding offenses against prison discipline
during the defendant's nine year incarceration from 1941 to 1950, for which
there had obviously been no separate conviction, and which were not
felonies or crimes involving moral turpitude, should not have been permitted.

 

249 F.2d at 689-90 (citations omitted); see also United States v. Cathey, 591 F.2d 268,
274 n.12 (5th Cir. 1979), which, citing Tomaiolo, held that "convictions" for violating military
discipline were not admissible to cross-examine a defendant testifying on his own behalf. 

 In its brief, the State argues that such evidence was admissible under Tex. Code
Crim. Proc. Ann. art. 37.07 (Vernon 1981 & Supp. 2001). However, by its own terms,
Article 37.07 applies only to the punishment phase of trial. Here, evidence of Mitchell's
disciplinary violations was introduced at the guilt/innocence phase of trial. Mitchell's
counsel specifically asked Mitchell about his prior disciplinary violations in prison. No
objections were made when the prosecutor then cross-examined Mitchell concerning the
details of those violations. When a defendant takes the stand and brings out certain
evidence on direct examination, he opens the door to the prosecutor's use of such
evidence and waives any objection to its admissibility. See Gaffney v. State, 940 S.W.2d
682, 687 (Tex. App.-Texarkana 1996, pet. ref'd) (op. on reh'g). 

 We must therefore determine whether counsel's opening the door to questions
about Mitchell's disciplinary record was deficient, and if so, whether such deficiency
prejudiced his defense. Since there was no hearing on any motion for new trial, we have
no record in this direct appeal as to defense counsel's thought process in opening the door
to this evidence. (3) 

 After the door was opened, the State then introduced many of the details concerning 
the disciplinary accusations that were brought against Mitchell. (4) On appellate review, we
presume that counsel's decisions are supported by trial strategy, unless they could not be
attributable to any plausible trial plan. Jackson v. State, 877 S.W.2d 768, 772 (Tex. Crim.
App. 1994); Poole v. State, 974 S.W.2d 892, 902 (Tex. App.-Austin 1998, pet. ref'd). In this
instance, however, we can perceive no plausible trial strategy for opening the door to this
kind of inflammatory evidence at the guilt/innocence phase of trial. We find counsel's
performance deficient. Compare Atkins v. Attorney General of Alabama, 932 F.2d 1430,
1431-33 (11th Cir. 1991), where it was held to be ineffective assistance of counsel to allow
without objection admission of fingerprint cards which contained a list of prior arrests, with
People v. Johnson, 579 N.E.2d 1291, 1293 (Ill. App. Ct. 1991), holding that failure to object
on hearsay grounds to admission of state's testimony regarding prison log constituted
ineffective assistance of counsel in prosecution for unlawful possession of a weapon in a
penal institution. However, our analysis does not end here. 

 Under the second prong of the Strickland test, if the evidence of guilt is
overwhelming, then there is no reasonable probability that the result of the defendant's trial
would have been different. Davis v. State, 830 S.W.2d 762, 766 (Tex. App.-Houston
[1st Dist.] 1992, pet. ref'd). In the present case, the charge was possession of a weapon
in a penal institution. All witnesses testified that Mitchell possessed a shank and that he
was an inmate confined in a penal institution. Mitchell admitted possessing the weapon,
chasing Bell while armed with the weapon, and that Bell did not possess a weapon. In light
of this overwhelming evidence of guilt, we cannot find that Mitchell was prejudiced by
counsel's ineffectiveness in opening the door to the introduction of Mitchell's disciplinary
record. See Johnson, 579 N.E.2d at 1293. 

 We find that Mitchell was not denied his right to self-representation, that he was
properly confined to fifty pages in his brief to this Court, and that he was not denied his
constitutional right to the effective assistance of counsel. This issue is overruled.

The Motion for New Trial

 In his fifth issue, Mitchell contends the trial court abused its discretion and hence
erred in ruling on a motion for new trial filed by his court-appointed counsel instead of a
motion for new trial that Mitchell filed pro se. He contends that as of the end of trial he
"terminated" his lawyer, and that on the same day his former lawyer filed a motion for new
trial, he also moved to withdraw. 

 Counsel appointed to represent an indigent defendant is bound to continue to
represent that defendant until "charges are dismissed, the defendant is acquitted, appeals
are exhausted, or the attorney is relieved of his duties by the court or replaced by other
counsel." Tex. Code Crim. Proc. Ann. art. 26.04(a) (Vernon 1989); Massingill v. State, 8
S.W.3d 733, 735 (Tex. App.-Austin 1999, no pet.). The responsibilities of court-appointed
counsel do not automatically terminate at the conclusion of trial. Ward v. State, 740 S.W.2d
794, 796 (Tex. Crim. App. 1987); Massingill, 8 S.W.3d at 735. An attorney may not
withdraw without the permission of the trial court, and the appointed attorney remains
defendant's counsel unless he is expressly permitted to withdraw. Ex parte Axel, 757
S.W.2d 369, 373-74 (Tex. Crim. App. 1988); Ward, 740 S.W.2d at 797-98; Fowler v. State,
874 S.W.2d 112, 114 (Tex. App.-Austin 1994, pet. ref'd). 

 It is well established that an accused is not entitled to hybrid representation, i.e., to
proceed pro se and be represented by an attorney at the same time. Meyer, 27 S.W.3d at
648; (5) Stelbacky v. State, 22 S.W.3d 583, 586 (Tex. App.-Amarillo 2000, no pet.). Once an
accused is represented by counsel, the trial court is entitled to look solely to the accused's
counsel and is not required to consider motions filed pro se during the period the accused
was so represented. Meyer, 27 S.W.3d at 648.

 In the present case, while counsel may have moved to withdraw, absent express
permission to withdraw given by the trial court, counsel continued to represent the accused. 
The trial court can, and did, properly look solely to counsel in these circumstances, and it
is not required to consider any pro se filings. This issue is overruled.

The "Entrapment" Defense

 Mitchell's sixth issue reads as follows: "Did the trial court abuse it's [sic] discretion
in denying Appellant his right to present witnesses at his entrapment hearing, at trial, and
refused to allow the perfection of a bill of exception."

 Mitchell's seventh issue also complains of the trial court's failure to conduct a pretrial
hearing on his entrapment claim.

 Mitchell filed a trial brief pro se, outlining his proposed defense of entrapment in
which he claims that the guards and the State attempted to retaliate against him because
he was a "writ writer"; that, "inexplicably," he became a target for an inmate gang that
attempted to extort money from him; that his attempts to go through proper channels within
the prison system were unavailing; and that he was repeatedly told by prison guards to
defend himself. He further contended that he was given a "steel bar" by a "law enforcement
agent" and told to defend himself. (6) 

 Tex. Pen. Code Ann. § 8.06(a) (Vernon 1994) sets forth the requirements for
establishing the defense of entrapment:

 It is a defense to prosecution that the actor engaged in the conduct charged
because he was induced to do so by a law enforcement agent using
persuasion or other means likely to cause persons to commit the offense. 
Conduct merely affording a person an opportunity to commit an offense does
not constitute entrapment. (7)

 

 As a "defense" under Tex. Pen. Code Ann. § 2.03 (Vernon 1994), the issue is not
submitted to the jury unless evidence is admitted supporting the defense. 

 Under Tex. Code Crim. Proc. Ann. art. 28.01, § 1 (Vernon 1989), a trial court may
set any criminal case for a pretrial hearing in order to determine, among other things, the
defense of entrapment. The use of the word "may" ordinarily connotes discretion or
permission, and it will not be treated as a word of command unless there is something in
the context or subsequent matter to indicate its usage in that sense. State v. Garza, 931
S.W.2d 560, 563 (Tex. Crim. App. 1996). There is nothing in this particular article of the
code to indicate that holding a pretrial hearing on the defense of entrapment is mandatory. 
We also note:

 [T]he defense of entrapment may be determined before trial. Here the
defendant has the burden to establish as a matter of law that he was
entrapped into committing the offense, and if he does so the case will be
dismissed. If a disputed factual issue is raised the defense must be
presented to the jury [or trier of facts] during the trial as any other defense.

 

7 Michael J. McCormick et al., Texas Practice: Criminal Forms and Trial Manual
§ 54.01 (10th ed. 1995) (emphasis added).

 At the pretrial hearing, Mitchell, acting pro se, brought his request for a pretrial
hearing on entrapment to the attention of the trial court, and the trial court denied his
request. Although the trial court could have permitted Mitchell to call witnesses at such
hearing, it was not obligated to do so. Even had Mitchell been allowed to produce his
witnesses, unless the trial court ruled that he established entrapment as a matter of law, he
would have still been required to call them at trial. Mitchell testified on his own behalf at
trial. He did not testify as to the matters set forth in his pretrial motion concerning
entrapment. Since there was no evidence of entrapment presented at trial, there was no
necessity for giving an instruction on this defense. Mitchell's sixth and seventh issues are
overruled. 

 We affirm the judgment.


 Donald R. Ross

 Justice


Date Submitted: October 31, 2001

Date Decided: November 1, 2001


Do Not Publish

1. The indictment states that the offense occurred on October 24, 1996. However,
as we previously stated, "pre-indictment" time is not considered in computation of length
of delay. See United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).
2. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). 
This standard was adopted as the standard for such claims made under the Texas
Constitution. Hernandez v. State, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986). 
3. The record in a direct appeal may contain a less than adequate inquiry into the
possible tactical reasons for counsel's acts or omissions and may lack completely
counsel's own explanation for such conduct. For that reason, the courts recognize that
direct appeal is often an inappropriate forum for ineffective assistance claims. However,
we are not foreclosed from doing so. Thompson v. State, 9 S.W.3d 808, 813-14 nn.5-6
(Tex. Crim. App. 1999). 
4. On cross-examination, the prosecutor asked Mitchell about his prison disciplinary
record, which included being "out of place," masturbating in front of female prison
employees, masturbating while in a van being transported to court, other instances of
masturbation, threats to guards, and spitting in a guard's face. 
5. In its discretion, the trial court may permit hybrid representation. Scarbrough v.
State, 777 S.W.2d 83, 92 (Tex. Crim. App. 1989).
6. In his trial brief, Mitchell cites Garcia v. State, 528 S.W.2d 604 (Tex. Crim. App.
1975), in which we find the following language, which apparently forms the basis of
Mitchell's entrapment defense:


 Appellant complains of the exclusion of evidence which would show
he had been working with law enforcement officers in the investigation of a
murder conspiracy case and that because of threats on his life and attempts
on the lives of other witnesses in the case, he had been told by law
enforcement officers involved in the case to arm himself.


Id. at 604.


 Surely the officers did not induce this appellant to arm himself for the
purpose of catching him so that they could prosecute him. This would be
entrapment.


Id. at 605 (Morrison, J., concurring).
7. Tex. Pen. Code Ann. § 8.06 (Vernon 1994) requires an accused who claims
entrapment to produce evidence that he was actually induced to commit the charged
offense; that is to say, he committed the offense because he was induced to do so. As
such, the defense contains both an "objective" and a "subjective" component. England v.
State, 887 S.W.2d 902, 913 (Tex. Crim. App. 1994).