[COMMENT1] 

 

 

 

 

 

                                                COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                       NOS.  2-08-004-CR

                                                2-08-005-CR

 

 

JOHN ALFRED CHRISTMAS                                                   APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM THE 97TH
DISTRICT COURT OF MONTAGUE COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

                                          I.  INTRODUCTION








Appellant John Alfred Christmas was convicted of
possession of a prohibited weapon and six counts of aggravated assault.  In two points, Appellant argues that the
trial court erred by denying his motion to dismissCclaiming
violation of both his federal and state right to a speedy trial.[2]
We will affirm.

                          II.  FACTUAL AND PROCEDURAL BACKGROUND

At the time of the events underlying this case,
Jean Gregory lived on a small parcel of land near Sunset, Texas.  Appellant was her live-in boyfriend.  Gregory lived in a double-wide mobile home.  She provided room and board to a coupleCYale
Clark II and Jennifer WelshCand
their two children in a single-wide trailer in exchange for labor and
assistance.  On the day in question,
December 13, 2005, two other children were visitingCClark=s
children from a prior marriage.

During the early evening of December 13, by all
accounts, Appellant and Clark got into a heated argument while unloading
Appellant=s vehicle.  Clark and Welsh attribute the argument to
Appellant=s having been intoxicated.  Appellant testified that the argument
escalated from his having confronted Clark about Clark=s having
possibly struck one of the children in the face.  At this point, Clark and Welsh gathered the
four children into their car and attempted to leave the premises.








There is no dispute that during their attempt to
leave, Appellant fired a handgun at the vehicle, successfully hitting it
twice.  Clark and Welsh testified that
Appellant had brandished his gun and fired at them before they reached the gate
to exit the property.  Appellant
testified that he fired several shots at the vehicle in self-defense because he
had been pinned under the gate during his attempts to prevent Clark and Welsh
from leaving with the childrenCconcerned
Clark might harm them.

Shortly after the vehicle made it to the highway,
it broke down.  Welsh ran to a nearby
house, called the police, and reported what had occurred.  The next day, Montague County law enforcement
executed a search warrant at Appellant=s and
Gregory=s
residence.  The officers seized a .380
handgun and a sawed-off shotgun. 
Appellant was charged with possession of a prohibited weaponCthe
shotgunCand with
six counts of aggravated assault. 
Appellant was arrested the same day the search warrant was executed,
December 14, 2005.








Indictments for these offenses were not returned
until June 12, 2006.  During the time
between his arrest and indictment, and up until and after Appellant=s jury
trial, Appellant remained in jail.  The
trial court appointed Appellant an attorney on June 27, 2006.  Despite having court appointed counsel,
Appellant filed his own hand written motion to dismiss all charges on July 10,
2006, claiming the State had failed to return indictments within 180 days.[3]








Appellant waived arraignment and entered a
written plea of not guilty to each charge on July 24, 2006.[4]  On August 16, 2006, the trial court denied
Appellant=s motion to dismiss regarding
whether the indictment was brought timely. 
A pretrial hearing was set for September 25, 2006.  Appellant, announcing not ready on September
25, joined the State in agreeing to reset the pretrial hearing for November 27,
2006.  Without the aid of his court
appointed attorney, Appellant again filed several pro se motions on October 9,
2007, none of which raised the issue of his speedy trial right.  Appellant=s trial
was ultimately set for and began on November 6, 2007.  Appellant filed another pro se motion to
dismiss on November 7, 2007, alleging a denial of his speedy trial right.  The trial court heard this motion on the same
date.

Appellant was the only person to testify at the
hearing.  The following colloquy took
place between Appellant and his trial counsel:

[DEFENSE
COUNSEL]:   And you were arrested for
these charges in December of 2005?

 

[Appellant]: Yes.

 

Q.     And have you been continuously in custody
since  that time up until now?

 

A.     Yes.

 

Q.     And during that ‑‑ you have
cause to be filed ‑‑ actually, it=s a motion prepared by
you, asking the Court to dismiss this cause or these causes for denial of
speedy trial;[[5]]
is that correct?

 

A.     Yes.

 

Q.     During that period of time that this case
has been pending, have you or do you have any concerns or problems that you
think would effect [sic] your defense as far as the delay in the trial?

 

A.     Yes, of course.  Just like the first witness, the trained,
paid professional couldn=t recall because it was
over two years ago.  That was his
statement, Bohannon, that was sitting here before me yesterday.

 








Q.     Well, the lapse of time certainly would
effect [sic] memory, I would suppose.  Is
that a concern?

 

A.     Oh, very much so.  And whatever ‑‑

 

Q.     Let me ask another question.  And as far as the delay is concerned,
memories do change as far as the facts or recollections are concerned?

 

A.     Oh, yes. 
And people move.  You can=t get ahold of
anybody.  After two years, you don=t know the addresses,
phone numbers.

 

Q.     Okay. 
Is there any particular witness that you had wanted to be present here
in trial that you were unable to bring to the Court?

 

A.     Mr. Rhodes, but I wouldn=t know ‑‑
have any idea where he lives now.

 

Q.     Okay. 
Can you think of any other difficulty that the delay has caused you as
far as your defense is concerned?

 

A.     It=s been just so long that ‑‑ to get
everything together.  And, like I say,
memories and, of course, the district attorney has had two years with a law
library and all of the things he has access to where I have ‑‑ and
haven=t been able to read a
newspaper.

 

Q.     Okay. 
Well, let me ask it this way:  Is
there anything else you wanted to present to the Court in regard to this
motion?

 

A.     To ‑‑ just the fact that
everywhere else in the United States, it is a pretty legitimate right that we
have for a speedy trial.  Every other
state in the union would consider it a fundamental right.

 

Q.     Okay. 
Is that all?

 

A.     Yeah.

 

Shortly after, the following colloquy took place
during the State=s cross-examination:








[Prosecutor]:       Mr. Christmas, as far as Mr. Rhodes goes,
is this a person who was a witness to the events that occurred that evening?

 

A.     No. 
He was a friend of Mr. Clark=s and talking with Mr. Clark had information that
wasn't in the statement.

 

Q.     Okay. 
Have you attempted to locate Mr. Rhodes through your attorney or any
other agency?  In other words, have you
made attempts to subpoena him or locate his whereabouts?

 

A.     Other than the name, I had no other way of ‑‑
I believe I gave my attorney the name quite a while back in a letter that was,
like, after ‑‑ I mean, he wasn=t my lawyer until seven months after I was
incarcerated sometime back.  It=s hard to recall.  It=s been a long time in the cage.

 

Q.     So as far as you know, that=s all you have done to
try to locate him since.  Do you know
when he moved?

 

A.     I mean, you=ve got to understand, I=ve been two years right
across the street without a window or a phone or access to ‑‑

 

Q.     That=s nonresponsive. 
Do you know when he moved?

 

A.     I have no clue.

 

Q.     That=s the question.

 

A.     I have no way of knowing.

 

Q.     Now, the statement you=ve mentioned or these
statements that he made would be related to you or to someone else?

 

A.     He related to me.  He was incarcerated across the street for a
couple of months.

 








After Appellant=s
testimony, the trial court took judicial notice of the clerk=s record
for each cause of action.  The trial
court also took judicial notice that Appellant had been appointed counsel on
June 27, 2006, and that Appellant had agreed to reset the September 25, 2006
pretrial date to November 27, 2006.  The
trial court denied Appellant=s motion
to dismiss and the jury trial proceeded.

Two days later, the jury found Appellant guilty
of all counts in both indictments.  The
jury assessed punishment at two years=
incarceration for the weapons charge and for each of counts one and two of the
assault charges.  The jury recommenced
that these sentences be suspended and that Appellant be placed on community
supervision.  The jury assessed two years=
incarceration on each of the remaining four assault counts without
recommendation.

Based on the jury=s
verdict, the trial court ordered that Appellant serve two years=
confinement for counts three through sixCthe
aggravated assault chargesCwith the
sentences to run concurrently.  The trial
court noted that the judgment would reflect 695 days credit to Appellant=s
sentence on each of these counts.[6]  The trial court suspended the sentences for
the weapons charge and for counts one and two of the assault charge and placed
Appellant on community supervision for a total of five years.  This appeal followed.








                                           III.  DISCUSSION

In two points, Appellant argues that the trial
court erred by denying his motion to dismiss. Citing both the United States and
Texas Constitutions, Appellant specifically complains that his right to a
speedy trial was violated. 

A.     The
Right to a Speedy Trial

The Sixth Amendment to the United States
Constitution and article 1, section 10 of the Texas Constitution guarantee an
accused the right to a speedy trial.  See
U.S. Const. amend. VI; Tex. Const. art. I, ' 10;
see also Zamorano v. State, 84 S.W.3d 643, 647 (Tex. Crim. App. 2002); Orand
v. State, 254 S.W.3d 560, 565 (Tex. App.CFort
Worth 2008, pet. ref=d).  Texas courts analyze claims of a denial of
this right, both under the federal and state constitutions, the same.  See Harris v. State, 827 S.W.2d 949,
956 (Tex. Crim. App. 1992).  The right
attaches once a person becomes an Aaccused,@ that
is, once one is arrested or charged.  United
States v. Marion, 404 U.S. 307, 321, 92 S. Ct. 455, 461 (1971) (A[I]t is
either a formal indictment or information or else the actual restraints imposed
by arrest and holding to answer a criminal charge that engage the particular
protections of the speedy‑trial provision of the Sixth Amendment.@).








Supreme Court precedent requires state courts to
analyze federal constitutional speedy trial claims Aon an ad
hoc basis@ by weighing and then balancing
the four Barker v. Wingo factors: 1) length of the delay, 2) reason for
the delay, 3) assertion of the right, and 4) prejudice to the accused. 407 U.S.
514, 530, 92 S. Ct. 2182, 2192 (1972); State v. Munoz, 991 S.W.2d 818,
821 (Tex. Crim. App. 1999); Orand, 254 S.W.3d at 565.  While the State has the burden of justifying
the length of delay, the defendant has the burden of proving the assertion of
the right and showing prejudice.  See
Barker, 407 U.S. at 531, 92 S. Ct. at 2193; see also Ex parte McKenzie,
491 S.W.2d 122, 123 (Tex. Crim. App. 1973) (stating that Aif an
accused made a prima facie showing of prejudice, the State must carry the
obligation of proving that the accused suffered no serious prejudice beyond
that which ensued from the ordinary and inevitable delay@).  The defendant=s burden
of proof on the latter two factors Avaries
inversely@ with the State=s degree
of culpability for the delay.  Robinson
v. Whitley, 2 F.3d 562, 570 (5th Cir.1993) (citing Doggett v. United
States, 505 U.S. 647, 657, 112 S. Ct. 2686, 2695 (1992)).  Thus, the greater the State=s bad
faith or official negligence and the longer its actions delay a trial, the less
a defendant must show actual prejudice or prove diligence in asserting his
right to a speedy trial.  Cantu v.
State, 253 S.W.3d 273, 280B81 (Tex.
Crim. App. 2008).













The Barker test is triggered by a delay
that is unreasonable enough to be Apresumptively
prejudicial.@ 
Doggett, 505 U.S. at 652 n.1, 112 S. Ct. at 2693 n.1 (1992).  There is no set time element that triggers
the analysis, but the court of criminal appeals has held that a delay of four
months is not sufficient while a seventeen‑month delay is.  Pete v. State, 501 S.W.2d 683, 687 (Tex.
Crim. App. 1973) (AAppellant herein was tried [for
rape] approximately four months after he was bench warranted from the Texas
Department of Corrections.  It is our
opinion that this short period of time could in no way be construed as >presumptively
prejudicial.=A); Phillips
v. State, 650 S.W.2d 396, 399 (Tex. Crim. App. 1983) (AAlthough
there is no precise length of delay which irrefutably constitutes a violation
of the right to a speedy trial in all cases, . . . a seventeen month
delay is sufficient to raise the issue.@); see
also Doggett, 505 U.S. at 651, 652 n. 1, 112 S. Ct. at 2693 n.1 (noting
that courts have generally found post-accusation delay Apresumptively
prejudicial at least as it approaches one year@).  Once the Barker test is triggered,
courts must analyze the speedy trial claim by first weighing the strength of
each of the Barker factors and then balancing their relative weights in
light of Athe conduct of both the
prosecution and the defendant.@  Zamorano, 84 S.W.3d at 648 (quoting Barker,
407 U.S. at 530, 92 S. Ct. at 2192).  No
one factor is either a necessary or sufficient condition to the finding of a
deprivation of the speedy trial right.  Id.  Instead, the four factors are related and
must be considered together along with any other relevant circumstances.  Barker, 407 U.S. at 530, 92 S. Ct. at
2192.  As no factor possesses Atalismanic
qualities,@ courts must engage Ain a
difficult and sensitive balancing process@ in each
individual case.  Zamorano, 84
S.W.3d at 648 (quoting Barker, 407 U.S. at 533, 92 S. Ct. at 2192).

Dismissal of the charging instrument with
prejudice is mandated only upon a finding that an accused=s speedy
trial right was actually violated.  See
Strunk v. United States, 412 U.S. 434, 440, 93 S. Ct. 2260, 2271
(1973).  Because dismissal of the charges
is a radical remedy, a wooden application of the Barker factors would
infringe upon the societal interest in trying people accused of crime, rather
than granting them immunization because of legal error.  Cantu, 253 S.W.3d at 281.  Thus, courts must apply the Barker
balancing test with common sense and sensitivity to ensure that charges are
dismissed only when the evidence shows that a defendant=s actual
and asserted interest in a speedy trial has been infringed.  See Barker, 407 U.S. at 534B35, 92
S. Ct. at 2192 (rejecting defendant=s claim
of a speedy trial violation despite a five-year delay when the record strongly
indicated that the defendant did not actually want a speedy trial).  The constitutional right is that of a speedy
trial, not dismissal of the charges.  Cantu,
253 S.W.3d at 281.








The amorphous quality of the right also leads to
the unsatisfactorily severe remedy of dismissal of the indictment when the
right has been deprived.  Id.  This is indeed a serious consequence because
it means that a defendant who may be guilty of a serious crime will go free,
without having been tried.  Id.  Such a remedy is more serious than an
exclusionary rule or a reversal for a new trial, but it is the only possible
remedy.  Id.

B.     Standard
of Review

In reviewing the trial court=s ruling
on an appellant=s speedy trial claim, we apply a
bifurcated standard of review: an abuse of discretion standard for the factual
components, and a de novo standard for the legal components.  Zamorano, 84 S.W.3d at 648.  Review of the individual Barker
factors necessarily involves fact determinations and legal conclusions, but the
balancing test as a whole is a purely legal question.  Cantu, 253 S.W.3d at 282.








Under this standard, we defer not only to a trial
judge=s
resolution of disputed facts, but also to the trial judge=s right
to draw reasonable inferences from those facts. 
Id. at 281.  In assessing
the evidence at a speedy trial hearing, the trial judge may completely
disregard a witness=s testimony, based on
credibility and demeanor evaluations, even if that testimony is uncontroverted.  Id. 
The trial judge may disbelieve any evidence so long as there is a
reasonable and articulable basis for doing so. 
Id.  And all of the
evidence must be viewed in the light most favorable to the trial judge=s
ultimate ruling.  Id.  Because Appellant lost in the trial court on
his speedy trial claim, we presume that the trial judge resolved any disputed
fact issues in the State=s favor, and we defer to the
implied findings of fact that the record supports.  See id. at 282.

C.     Analysis
of the Barker Factors

1.     Length of Delay

The length of delay is a Atriggering
mechanism@ for analysis of the other Barker
factors.  Barker, 407 U.S. at 530B32, 92
S. Ct. at 2192B93; Orand, 254 S.W.3d at
566.  AUntil
there is some delay which is presumptively prejudicial, there is no necessity
for inquiry into the other [Barker] factors that go into the balance.@  Barker, 407 U.S. at 530B32, 92
S. Ct. at 2192B93.  Presumptive prejudice does not necessarily
indicate a statistical probability of prejudice; it simply marks the point at
which courts deem the delay unreasonable enough to trigger the Barker
inquiry.  Doggett, 505 U.S. at 652
n.1, 112 S. Ct. at 2691 n.1; Munoz, 991 S.W.2d at 821B22.  This Barker factor Ais
actually a double [i]nquiry.@  Doggett, 505 U.S. at 651, 112 S. Ct.
at 2690.  The first inquiry is whether
the delay triggers the Barker analysis. 
Id.  If the analysis is
triggered, the second enquiry Aconsider[s],
as one factor . . . the extent to which the delay stretches beyond the bare
minimum needed to trigger judicial examination of the claim.@  Id.








The State concedes that the almost twenty-three
month delay between Appellant=s arrest
and his eventual trial is sufficient to trigger the Barker
analysis.  We agree.  We also conclude that the length in delay,
even though in small part attributable to Appellant when he agreed to a
continuance, weighs against the State.

2.     Reasons
for the Delay








Under Barker, Adifferent
weights should be assigned to different reasons@ for the
delay.  Barker, 407 U.S. at 531,
92 S. Ct. at 2192.  This factor seeks to
ensure that courts not simply concentrate on the sheer passage of time without
taking into account the reasons underlying the delay.  See, e.g., Rashad v. Walsh, 300 F.3d
27, 34 (1st Cir. 2002).  The inquiry into
causation involves a sliding scale: deliberately dilatory tactics must be
weighed more heavily against the State than periods of delay resulting from
negligence.  Barker, 407 U.S. at
531, 92 S. Ct. at 2192.  Furthermore,
valid reasons for delay should not be weighed against the State.  See Munoz, 991 S.W.2d at
824.  And delay which is attributable in
whole or in part to the defendant can weigh against the defendant and may even
constitute a waiver of a speedy trial claim. 
See Barker, 407 U.S. at 529, 92 S. Ct. at 2191B92
(noting that delay attributable solely to defendant Amay be
given effect under standard waiver doctrine@); see
also Dickey v. Florida, 398 U.S. 30, 48, 90 S. Ct. 1564, 1574 (1970)
(Brennan, J., concurring) (reasoning that a defendant may be Adisentitled
to the speedy‑trial safeguard in the case of a delay for which he has, or
shares, responsibility@); United States v. Anderson,
902 F.2d 1105, 1110 (2nd Cir.) (holding that there was no speedy trial
violation when, among other things, defense counsel agreed to delays and
continuances for purposes of plea negotiations), cert. denied, 498 U.S.
867 (1990).

Like the first factor, the State also concedes
that the record does not provide any valid reason for the delay of Appellant=s
trial.  While we agree that this factor
weighs against the State, the record does demonstrate that Appellant agreed to
at least one continuance.  Further, there
is a lack of any evidence that the State deliberately used dilatory
tactics.  Even though we conclude that
this factor weighs against the State, it does not weigh heavily against the
State.

3.     Assertion
of the Right








We next consider the extent to which Appellant
affirmatively sought a speedy trial.  Barker,
407 U.S. at 531B32, 92 S. Ct. at 2192.  The nature of the speedy trial right makes Ait
impossible to pinpoint a precise time in the process when the right must be
asserted or waived, but that fact does not argue for placing the burden of
protecting the right solely on defendants.@   Id.
at 527, 92 S. Ct. at 2193.  But even
though it is the State=s duty to bring the defendant to
trial, it is the defendant=s duty
to assert the right to a speedy trial.  Id.
at 527B28, 92
S. Ct. at 2193 (AWe think the better rule is that
the defendant=s assertion of or failure to
assert his right to a speedy trial is one of the factors to be considered in an
inquiry into the deprivation of the right.@).

Whether and how a defendant asserts this right is
closely related to the other three factors because the strength of the
defendant=s efforts will be shaped by
them.  Id. at 531, 92 S. Ct. at
2196.  AThe more
serious the deprivation, the more likely a defendant is to complain.@  Id. 
Thus, the defendant=s
assertion of the right to a speedy trialCor the
failure to assert itCis entitled to strong
evidentiary weight in determining whether the defendant is being deprived of
the right.  Id. at 531B32, 92
S. Ct. at 2196.  Filing for a dismissal
instead of a speedy trial generally weakens a speedy trial claim because it
shows a desire to have no trial instead of a speedy one.  Cantu, 253 S.W.3d at 283.  If a defendant fails to first seek a speedy
trial before seeking dismissal of the charges, the defendant should provide
cogent reasons for this failure.  Id.;
see also Parkerson v. State, 942 S.W.2d 789, 791 (Tex. App.CFort
Worth 1997, no pet.).








Repeated requests for a speedy trial weigh
heavily in favor of the defendant, while the failure to make such requests
supports an inference that the defendant does not really want a trial, only a
dismissal.  Barker, 407 U.S. at
534B36, 92
S. Ct. at 2192B95 (A[B]arring
extraordinary circumstances, we would be reluctant indeed to rule that a
defendant was denied this constitutional right on a record that strongly
indicates . . . that the defendant did not want a speedy trial.@); see
also United States v. Palmer, 537 F.2d 1287, 1288 (5th Cir. 1976) (A[T]he
point at which the defendant asserts his right is important because it may
reflect the seriousness of the personal prejudice he is experiencing.@);
Harris, 827 S.W.2d at 957 (A[A]ppellant=s lack
of a timely demand for a speedy trial indicates strongly that he did not really
want a speedy trial.@).

In Palmer, the Fifth Circuit held that
because the defendant @first asserted his right thirty
months after his arrest, which was one month after he first received
notification of his indictment, and he complained at that time only of the 22‑month
pre‑indictment delay,@ his Asilence
during the entire pre‑indictment period work[ed] against him because it
suggest[ed] that any hardships he suffered were either minimal or caused by
other factors.@ 
Palmer, 537 F.2d at 1288.








Likewise, in this case, Appellant did not assert
his speedy trial right until after trial had begun.  And when Appellant did assert his right, it
was in the form of a motion to dismiss. 
In fact, Appellant filed multiple pro se motions to dismiss during his
pretrial incarceration, despite having a court-appointed attorney.  The trial court could have reasonably
inferred that Appellant was not interested in a speedy trial, but rather that
he was interested only in a dismissal of the charges against him.  We conclude, as the trial court must have,
that this factor weighs against Appellant=s claim
that his speedy trial right was violated.

4.     Prejudice

Because Apretrial
delay is often both inevitable and wholly justifiable,@ the
fourth Barker factor examines whether and to what extent the delay has
prejudiced the defendant.  Barker,
407 U.S. at 532, 92 S. Ct. at 2193; Doggett, 505 U.S. at 656, 112 S. Ct.
at 2692.  When a court analyzes the
prejudice to the defendant, it must do so in light of the defendant=s
interests that the speedy trial right was designed to protect: (1) to prevent
oppressive pretrial incarceration, (2) to minimize the accused=s
anxiety and concern, and (3) to limit the possibility that the accused=s
defense will be impaired.  See Dragoo
v. State, 96 S.W.3d 308, 315 (Tex. Crim. App. 2003) (citing Barker,
407 U.S. at 532, 92 S. Ct. at 2193).  Of
these interests, the third is the most important because the inability of a
defendant to adequately prepare his case skews the fairness of the entire system.  Barker, 407 U.S. at 532, 92 S. Ct. at
2193; Doggett, 505 U.S. at 654, 112 S. Ct. at 2692; Dragoo, 96
S.W.3d at 315.








Appellant argues that this factor should weigh in
favor of finding that his speedy trial right was violated because his pretrial
incarceration was oppressive, he suffered Aanxiety
and concern@ about the preparation of his
defense, and he was unable to locate a witness in preparing for his defense due
to his incarceration.  We disagree.

Appellant=s
incarceration may have been oppressive if he had not received credit on his
sentence for time served or if he had ultimately been found innocent of the
charges, but Appellant received credit on his sentence for his pre-trial
incarceration.  See Starks v. State,
266 S.W.3d 605, 612 (Tex. App.CEl Paso
2008, no pet.) (holding that appellant=s twenty‑five‑month
pretrial incarceration was not oppressive when appellant received credit on his
sentence for time served and appellant ultimately pleaded guilty to charges); see
also United States v. Casas, 425 F.3d 23, 34B35 (1st
Cir. 2005) (holding defendants=
allegations of anxiety and concern during forty-one month period of pretrial
incarceration insufficient to show violation of speedy trial right when time
served was credited against sentences they received upon conviction); Gray
v. King, 724 F.2d 1199, 1204 (5th Cir. 1984) (holding that ten-month
incarceration was not oppressive pretrial incarceration when defendant received
credit for pretrial incarceration).








As to Appellant=s claim
of having suffered from anxiety, any criminal charge is certain to bring a
level of anxiety with it; however, Appellant failed to introduce any evidence
that the anxiety he suffered either was abnormal or caused his case
prejudice.  See Goodrum v.
Quarterman, 547 F.3d 249, 263 (5th Cir. 2008) (A[G]eneralized
expressions of anxiety and concern amount to little more than a nominal showing
of prejudice.@).

Finally, although Appellant mentions a witness he
was unable to locate due to his incarceration, Appellant did not testify how
that witness=s testimony would be relevant to
his case.  Appellant admitted that the
witness was not a witness to the events and said only that the witness had Ainformation@ about
another witness=s statement, but did not
elaborate on what the information was or what specific statement he was
referring to.  When asked whether he had
attempted to locate this alleged missing witness, Appellant ultimately replied,
A[I]t=s hard
to recall.  It=s been a
long time in the cage.@








The trial court was entitled to disbelieve all or
part of Appellant=s testimony concerning his
attempts to locate this witness.  See
Cantu, 253 S.W.3d at 281.  The trial
court was also entitled to draw the reasonable inference that Appellant=s lack of
specificity concerning this alleged witness=s
relevance to Appellant=s defense undermined the
importance of the witness=s testimony.  The trial court could have reasonably
concluded that Appellant had failed to demonstrate that any witnesses forgot
any details or otherwise became unavailable as a result of the delay or that
Appellant himself could not recall the events because of the length of the
delay.  See Starks, 266 S.W.3d at
613.  In short, Appellant has not
demonstrated any personal or defense prejudice. 
The fourth factor favors a finding that Appellant=s right
to a speedy trial was not violated.

5.     Balancing
the Factors








Having addressed the Barker factors, we
must now balance them.  In balancing
these factors, we find the case of Meyer v. State from our sister court
in Waco instructive.  See Meyer v.
State, 27 S.W.3d 644, 651 (Tex. App.CWaco
2000, pet. ref=d), abrogated on other
grounds by Robinson v. State, 240 S.W.3d 919, 922 (Tex. Crim. App.
2007).  Meyer was incarcerated during a
twenty-three month delay between his arrest and trial, the State gave no valid
reason for the delay, and Meyer timely and consistently asserted his right to a
speedy trial.  Id. at 649B51.  The court held that although Meyer had
suffered some oppressive pretrial incarceration and undue anxiety, he did not
make even a prima facie showing that his defense had been impaired by the
passage of time resulting from the delay in his trial.  Balancing the Barker factors, the Waco
court of appeals concluded that Meyer was not denied his speedy trial
right.  Id. at 651.[7]

In this case, like in Meyer, Appellant was
incarcerated during a twenty-three month delay between his arrest and trial and
the State has given no valid reason for the delay.  Also, like in Meyer, Appellant has not
even made a prima facie showing that his defense was impaired by the passage of
time resulting from the delay in his trial. 
But unlike in Meyer, Appellant in this case did not timely and
consistently assert his right to a speedy trial, rather he only asserted the
right after trial had begun and then in the form of a motion to dismiss.  He had also previously filed his own motions
to dismiss despite having court-appointed counselCindicating
that he was not interested in a speedy trial, but rather interested in not
having a trial at all.








In conclusion, weighing in favor of finding that
Appellant=s speedy trial right was
violated are the facts that there was a twenty-three month delay between his
arrest and trial and the State has given no valid reason for the delay.  Weighing against finding a violation of
Appellant=s speedy trial right is the fact
that he failed to assert his right until more than twenty-three months after
his arrest, and then, he asserted that right in the form of a motion to dismiss
and after his trial had begun.  Further,
there is a lack of any substantial personal or defense prejudice resulting from
the delay and Appellant received credit on his sentence for time served.  We hold that the weight of these factors,
balanced together, supports the trial judge=s ruling
to deny Appellant=s motion to dismiss and that
there was no violation of his right to a speedy trial.  We overrule Appellant=s two
points.

                                          IV.  CONCLUSION

Having overruled Appellant=s two
points, we affirm the trial court=s
judgment.

 

DIXON
W. HOLMAN

JUSTICE

PANEL:  GARDNER and WALKER, JJ.; DIXON W. HOLMAN, J.
(Senior Justice, Retired, Sitting by Assignment).

 

WALKER, J. filed a
concurring opinion.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: March 5, 2009











 
 
 
 
 
 
 




 

 

 

                                      COURT OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
2-08-004-CR

                                        NO.
2-08-005-CR

 

JOHN ALFRED CHRISTMAS                                                   APPELLANT

                                                   V.

THE STATE OF TEXAS                                                                STATE

                                              ------------

           FROM
THE 97TH DISTRICT COURT OF MONTAGUE COUNTY

                                              ------------

                    CONCURRING
MEMORANDUM OPINION[1]

                                              ------------

I respectfully concur with the majority=s
disposition of this appeal.  I write
separately to express some disagreement with the majority=s
analysis of the second two Barker[2]
speedy trial factors.  Ultimately,
however, existing case law mandates the result reached by the majority.








The facts of the case are correctly and
adequately set forth by the majority, except the mostly additional facts that
are set forth below as pertinent.  As the
majority points out, the State=s
attorney candidly conceded during oral argument that the first and second Barker
factorsCthe
length of the delay and the reasons for the delayCweigh in
favor of Appellant.  See Barker,
407 U.S. at 530, 92 S. Ct. at 2192.

Regarding the third Barker factorCthe
extent to which Appellant asserted his right to a speedy trialCI cannot
agree with the majority=s determination that Appellant
did not assert his speedy trial right until after trial had begun.  Majority Op. at 19.  A review of the record shows that Appellant
repeatedly attempted to cause his case to come to a headCwhether
by dismissal or disposition at trial.  See
id.  Appellant sat in jail for six
months before an indictment was returned against him or an attorney was
appointed for him.  On the day that the
trial court appointed his attorney, the court said it would Asee
about appointing an attorney for you if you want to have one,@ to
which Appellant replied, AWell, I=ve got
to do something.  I can=t even
get copies made.  I have no access to the
law library or anything. . . . So I=m kind
of crippled here.@ 
Later in the same hearing, Appellant noted that an appointed attorney Awould be
better than I am doing.@








The record shows that even after an attorney was
appointed, Appellant was the one, rather than his attorney, to file a motion to
dismiss,[3] claiming that the State
failed to return an indictment within 180 days.  See Tex. Code Crim. Proc. Ann. art. 32.01
(Vernon 2006) (providing for dismissal of charges when defendant has been
detained in custody without presentment of an indictment on or before the later
of either the last day of the next term of court which is held after defendant=s
commitment or on or before the 180th day after the date of commitment).  Although Appellant=s motion
to dismiss failed to use the magic words requesting a speedy trial, it is clear
that Appellant was attempting to do something to force his case out of its
stalemate.








Appellant=s
efforts to move his case off dead center are further evidenced by the fact that
two months after the hearing on Appellant=s first
motion to dismiss, he filed several handwritten motions for discoveryCmotions
attempting to move the case forward.  And
on the day of trial, Appellant filed a second handwritten motion to dismiss,
this time alleging a denial of his right to a speedy trial.  When his attorney presented the motion to the
court, he explained that Appellant brought it with him to court that day and
that the State had not had a chance to review it.  Appellant explained, AI just
got B I have
no access B until I got that copy of the
constitution and stuff, I didn=t know
what to put in it.@













Appellant does not bear the burden to bring
himself to trial; that is the State=s
duty.  See Cantu v. State, 253
S.W.3d 273, 282 (Tex. Crim. App. 2008) (citing Barker, 407 U.S. at 527B28, 92
S. Ct. at 2190B91).  Although Appellant does have the
responsibility to assert his right to a speedy trial in some fashion, the right
to a speedy trial is constitutionally guaranteed not only to the vigilant and
the knowledgeable.  Id.; Orand
v. State, 254 S.W.3d 560, 568 (Tex. App.CFort
Worth 2008, pet. ref=d) (citing Barker, 407
U.S. at 527 n.27, 92 S. Ct. at  2190
n.27).  The record demonstrates that
Appellant was not simply acquiescing to the delay while he was jailed for
twenty-three months; Appellant sought access to the law library and to items
necessary to prepare a defense, and ultimately asserted, albeit in a motion to
dismiss, his right to a speedy trial.  See
Barker, 407 U.S. at 527, 92 S. Ct. at 2190 (noting that it is impossible to
pinpoint a precise time in the process when the defendant must assert his right
to a speedy trial).  These efforts by
Appellant make analysis of the third Barker factor a much closer call
than recognized by the majority. 
Nevertheless, existing case law simply precludes a determination that
this factor weighs in Appellant=s
favor.  See, e.g., id. at
517B19, 533B35, 92
S. Ct. at 2185B87, 2193B94
(holding that filing of motion to dismiss indictment in response to Aanother
motion for continuance@ by government after over
three-year delay was not assertion of speedy trial right); United States v.
Palmer, 537 F.2d 1287, 1288 (5th Cir. 1976) (holding that defendant=s
silence during twenty-two month pre-indictment period weighed against him when
he asserted his right thirty months after arrest and one month after notified
of his indictment); Cantu, 253 S.W.3d at 277, 286 (noting that appellant=s
tardiness in asserting his right weighed against him when he filed motion to
dismiss less than two months after he was charged but over sixteen months after
his arrest); Dragoo v. State, 96 S.W.3d 308, 315 (Tex. Crim. App. 2003)
(holding that defendant=s failure to assert speedy-trial
violation for three and a half years, until just before trial began, although
represented by counsel and absent any assertion that counsel was ineffective,
caused third Barker factor to weigh against him); Phillips v. State,
650 S.W.2d 396, 401 (Tex. Crim. App. 1983) (A[A]
defendant=s motivation in asking for
dismissal rather than a prompt trial is clearly relevant, and may sometimes
attenuate the strength of his claim.@);
Parkerson v. State, 942 S.W.2d 789, 791 (Tex. App.CFort
Worth 1997, no pet.) (holding that appellant=s
request for dismissal, rather than speedy trial, weakened his speedy-trial
claim).








Regarding the fourth Barker factor, Aprejudice,@
Appellant suffered pretrial incarceration in an uncomplicated case for
twenty-three months; six months passed before Appellant was indicted and before
counsel was appointed for him.  See
Barker, 407 U.S. at 531B32, 92
S. Ct. at 2192B93.  The majority summarily concludes that this
pretrial incarceration was not oppressive because Appellant received credit for
time served.  Maj. Op. at 20.  Receiving credit retroactively for time
served, however, cannot completely undo or cure oppressive pretrial incarceration.  See State v. Munoz, 991 S.W.2d
818, 828 (Tex. Crim. App. 1999) (recognizing that A[w]hat
is dispositive of >this [oppressive pretrial
incarceration] consideration= is that
[Appellant] was incarcerated during the entire [twenty-three]‑month delay@); see
also Barker, 407 U.S. at 532B33, 92
S. Ct. at 2193 (AThe time spent in jail awaiting
trial has a detrimental impact on the individual.  It often means loss of a job; it disrupts
family life; and it enforces idleness. 
Most jails offer little or no recreational or rehabilitative programs.  The time spent in jail is simply dead
time.  Moreover, if a defendant is locked
up, he is hindered in his ability to gather evidence, contact witnesses, or
otherwise prepare his defense.@).

The prejudice to Appellant is also somewhat
self-evident from the nature of the charges against him; individuals engaged in
and witnesses to domestic disputes escalating to assaults sometimes live more
transient lifestyles.  After twenty-three
months of pretrial incarceration, Appellant testified that Apeople
move.  You can=t get
ahold [sic] of anybody.  After two years,
you don=t know
the addresses, phone numbers.@  Appellant also testified that he would have
called a Mr. Rhodes to testify to Ainformation
that wasn=t in the statement@ if he
knew how to contact him.  Ultimately,
Appellant called only two witnesses at trialChimself
and his girlfriend at the time of the incident. 
Under the fourth Barker factor, affirmative evidence of prejudice
is not necessary and the presumption of prejudice grows and intensifies over
time.  See Orand, 254 S.W.3d at
569 (noting that Atime=s
erosion of exculpatory evidence and testimony can rarely be shown@).








Existing case law, however, mandates that after a
two-year delay Appellant must establish more than speculative prejudice to his
defense.  See, e.g., Cantu,
253 S.W.3d at 277 (noting in its prejudice analysis that Athere
was no evidence that appellant lost his job or had his work schedule disrupted@); Shaw
v. State, 117 S.W.3d 883, 890 (Tex. Crim. App. 2003) (A[A]ppellant
offered no evidence to the trial court that the delay had caused him any
unusual anxiety or concern, i.e., any anxiety or concern beyond the level
normally associated with being charged with [the] crime.@); Burgett
v. State, No. 02-05-00377-CR, 2006 WL 3525434, at *4 (Tex. App.CFort
Worth Apr. 25, 2007, pet. ref=d) (mem.
op., not designated for publication) (finding no connection between appellant=s lack
of access to the law library with his claim of prejudice); State v. Wray,
No. 05‑01‑01799‑CR, 2002 WL 1763567, at *4 (Tex. App.CDallas
July 31, 2002, pet. dism=d) (not designated for
publication) (holding delay of two and one-half years was not presumptively
prejudicial); Meyer v. State, 27 S.W.3d 644, 650 (Tex. App.CWaco
2000, pet. ref=d) (holding that defendant=s claim
of prejudice based on missing witnesses did not support prejudice finding
because defendant, who was incarcerated during the entire twenty-three month
delay, failed to address both materiality and relevance of the missing
witnesses and his efforts to find them), abrogated on other grounds by
Robinson v. State, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007) .  Here Appellant did not do so.

For
the reasons stated above, I respectfully concur in the majority=s opinion.

SUE
WALKER

JUSTICE

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: March 5, 2009











[1]See Tex. R. App. P. 47.4.





[2]See U.S. Const. amend. VI;
Tex. Const. art. I, ' 10.





[3]Although Appellant=s motion does not cite a
specific statute, at the hearing addressing this motion, all parties refer to
Texas Code of Criminal Procedure 32.01.  See
Tex. Code Crim. Proc. Ann. art. 32.01 (Vernon 2006) (AWhen a defendant has been
detained in custody . . . the [charges shall be dismissed] . . . if indictment
. . . [is] not presented against such defendant on or before the last day of
the next term of the court which is held after his commitment or admission to
bail or on or before the 180th day after the date of commitment or admission to
bail, whichever date is later.@).  The
trial court determined that the indictment had been properly presented against
Appellant Abefore the last day of
the next term of the court.@  See
id.





[4]Although the prohibited
weapons charge and the six aggravated assault charges were filed under separate
cause numbers in the trial court, each of the procedural dates are parallel for
both cause numbers, and the trial court, upon agreement between Appellant and
the State, granted a motion of joinder prior to trial so that both causes would
be tried before the same jury.





[5]Appellant=s motion for dismissal
filed on November 7, 2007, is the only motion specifically mentioning his
speedy trial right.  The hearing was
conducted to address this motion.  Both
of the colloquies duplicated in this opinion contain the entirety of Appellant=s testimony at this
hearing.





[6]The trial court noted
that at the time of sentencing, Appellant still had roughly 35 days remaining
on each of his two-year sentences. 





[7]It it is worth noting
that Meyer sought a habeas claim in federal court.  Meyer v. Dretke, 291 F. Supp.2d 471,
472 (N.D. Tex 2003), aff=d 104 Fed. Appx. 956 (5th Cir. 2004), cert.
denied 544 U.S. 923 (2005).  The
federal district court for the Northern District of Texas denied habeas relief,
holding that the Waco court of appeals=s holding was neither Acontrary to, [nor] an
unreasonable application of, clearly established federal law as determined by
the Supreme Court.@  Id. at 479.





[1]See Tex. R. App. P. 47.4.





[2]Barker v. Wingo, 407 U.S. 514, 530, 92
S. Ct. 2182, 2192 (1972).





[3]The same day that he filed his motion to
dismiss, Appellant also filed a motion requesting that the court instruct the
Montague County Sheriff=s Department and jail
staff to provide him access to confidential documents, legal tablets, ink pens,
and the Montague County law library. 
Appellant explained in his motion that the jail administrator Arepeatedly denied me
access to the law library@ and told Appellant Athat copies and access to
the law library are not requirements of the state jail commission.@  In his motion, Appellant noted that his
court-appointed attorney was acting as co-counsel to Appellant.  The record is silent regarding whether the
court approved of this hybrid representation, but both of Appellant=s handwritten motions to
dismiss were relied upon by counsel at hearings on these motions and the trial
court ruled on these motions.  See
Robinson v. State, 240 S.W.3d 919, 923 (Tex. Crim. App. 2007) (holding that
trial court is free to disregard pro se motions of a defendant represented by
counsel, but once a court chooses to rule on such motions, that those decisions
are reviewable); Webb v. State, 533 S.W.2d 780, 784 (Tex. Crim. App.
1976) (holding that although a criminal defendant does not have the right to
hybrid representation, a patient trial judge may permit it).















 [COMMENT1]

Majority opinion by Justice Holman; Concurring
opinion by Justice Walker